No. 27,846.

J. M. ALGEO, *Appellee,* v. LULA D. ALGEO, as Administratrix, etc.,
*Appellant.*

(263 Pac. 1077.)

SYLLABUS BY THE COURT.

1. TROVER AND CONVERSION—*Evidence of Wrongful and Fraudulent Conversion.* A finding in an action for the wrongful and fraudulent conversion of property, in which plaintiff had a half interest, is held to have been sustained by sufficient evidence.

2. SAME—*Title and Interest to Support Action.* The title and interest of plaintiff in the property was sufficient to warrant him in bringing an action for the fraudulent conversion of the property.

3. LIMITATIONS OF ACTIONS—*Fraud—When Action Accrues.* As the action was brought for relief on the ground of concealment and fraud, of which the plaintiff had no knowledge for a considerable time, the cause of action did not accrue until the discovery of the fraud.

Appeal from Sedgwick district court, division No. 3; GROVER PIERPONT, judge. Opinion filed February 11, 1928. Affirmed.

*Charles G. Yankey, John L. Gleason* and *Kenneth K. Cox,* all of Wichita, for the appellant.

*John Madden* and *John Madden, Jr.,* both of Wichita, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.:   J. M. Algeo commenced this action against the administratrix of the estate of Charles L. Algeo, deceased, to determine the existence of a partnership between plaintiff and his brother, Chas. L. Algeo, in his lifetime, and to have an accounting made of the partnership affairs as well as to recover the sum of $6,836.50, alleged to be due from the estate to plaintiff for property and assets in which the plaintiff had an interest converted and appropriated by the defendant. At the trial a verdict was returned finding for the plaintiff and awarding him $1,450 upon which judgment was entered. Defendant appeals.

Plaintiff alleged and contended at the trial that Charles L. Algeo, who had been engaged for some time in drilling oil and gas wells in the Kansas field and was then running three strings of tools, on December 20, 1919, entered into a partnership relation with his

Limitations of Actions, 37 C. J. p. 929 n. 1; 17 R. C. L. 748. Trover and Conversion, 38 Cyc. pp. 2048 n. 66, 2085 n. 21; 26 R. C. L. 1131.

brother, the plaintiff, by which it was agreed that he and his brother would buy another string of tools called a bobbed-tailed set to be used in drilling contracts they might obtain. The bobbed-tailed tools were to be paid for out of the drilling profits, and when paid for out of profits one-half of all the tools in the set were to belong to plaintiff; that afterwards the profits of the drilling business were to be equally divided between the parties. It was alleged that plaintiff was to care for all the tools of his brother that were in operation in the field and that he faithfully carried out his obligations in that respect. That in pursuance of the agreement he paid to his partner $700 on account of the new string of tools and gave his time, skill and experience in handling the new string as well as the other strings of tools owned by his brother. That the new string was purchased for $5,672.99; had been operated in drilling what was known as Ferrier well No. 6, Urschel well No. 1, and Urschel well No. 4, of the Pure Oil Company; that plaintiff was in personal charge of the operations, and that there was paid on the Ferrier well No. 6, $11,138; on the Urschel well No. 1, $10,224 and upon Urschel well No. 4 there had been paid $8,601.58, payment therefor having been made after the death of his brother. That the sums received, after taking out the expenses of the drilling, was over and above the amount paid for the new string of tools, and that one-half of that set became and was the property of plaintiff. It was further alleged that Charles L. Algeo died on December 19, 1920; that Lula D. Algeo was appointed administratrix of his estate, took possession of all the moneys deposited to the credit of her husband, as well as that due for the drilling done. She took possession of all the tools, including that in which the plaintiff owned a one-half interest, as the property of her husband and intentionally concealed plaintiff's ownership in the tools from the probate court. That after the Urschel well No. 4 was completed, plaintiff went to his former home in West Virginia, and the first information he received relating to the misappropriation and conversion of his interest in the tools was in December, 1923, when she sent him a statement of the money received for drilling the wells, the expense of the drilling, the money received from a sale of the tools, with a statement that a small amount was due to plaintiff. Upon receiving this statement he came back and demanded an accounting with defendant as to his interest, which was denied. Plaintiff alleged that she fraudulently prolonged the administration, representing

that she was unable to make an accounting of the estate; that her agent, Kitchell, who was in charge of her business affairs, and knew of the earnings and profits of the drilling contracts, was out of the state, and that she could not settle with plaintiff until he returned. She filed her final report of the administration of the estate about January, 1924, and she had concealed plaintiff's interest and ownership in the tools. Plaintiff says that he then filed exceptions to the report and asked for an accounting, but she denied the partnership, denied that he had any interest in the tools, and alleged that the court had no jurisdiction to determine the matter of partnership and an accounting of the partnership business.

The defendant answered with a general denial specially denying the existence of a partnership, and alleged a misjoinder of causes of action, that the action was barred by the statute of limitations, and that the plaintiff was indebted to the estate in the sum of $3,439.18.

Much testimony was taken as to the relationship between plaintiff and his brother, the ownership of an interest with the brother, and as to the value of the plaintiff's interest in the tools which it was alleged had been converted by the defendant. At the trial the plaintiff elected to rely upon a conversion of a half interest in the tools purchased and furnished by his brother under the agreement between them. It is contended by the defendant that the evidence did not establish a partnership between the brothers, but there was testimony which tended to show admissions made by Charles L. Algeo that he had taken his brother in as a partner; that his brother had a working interest in the tools; and to another witness he admitted that Melvin had a half interest in the string of tools in a well which was being drilled. In statements of account made by the defendant and her agent to plaintiff, there was a recognition of the partnership or at least that the plaintiff had a half interest in the tools, and in these plaintiff was charged with one-half of the expenses of operating the tools.

The controversy here is largely one of fact and turns upon the question whether there was evidence to support the verdict. The working arrangement between the brothers, whatever it may be called, was one by which the plaintiff was to acquire a half interest in the tools purchased by the deceased brother when the profits of the enterprise were sufficient to pay for that interest. The relations between the brothers and the provisions of their contract, although

oral, were well established by the evidence. It also tends to show that the interest had been paid for from the profits when the plaintiff's brother died. It was not important that the last well drilled had not been completed when his brother died. It was enough to prove that the profits gained in the drilling were sufficient to pay for the one-half interest in the tools. That involved a consideration of $700 paid by plaintiff on account of the tools, the earnings on the several wells drilled, and the profits after deducting the proper expenses from the earnings. Statements of the accounts were made by defendant and her agent, one of which recognized that plaintiff had an interest in the tools and that his interest, when expenses charged to him were deducted from the gross earnings, amounted to only $267.79. In that statement furnished to plaintiff the latter first discovered that the tools had been sold. In another statement of account the defendant acknowledged that plaintiff had an interest in the tools, and in summing up the items of account, the difference between the earnings and expenses showed that plaintiff's interest in the tools amounted to $1,773.70. These admissions supported the testimony of the plaintiff. The jury found in favor of the plaintiff and assessed the amount of his recovery at $1,450. That finding was approved by the trial court, and upon that finding and approval we cannot say that the verdict is without support.

Some contention is made that the plaintiff had no title to the tools which warranted him in maintaining conversion. It is insisted that the title was not acquired until the tools had been paid for from the earnings, and that to maintain conversion plaintiff was required to prove ownership and right of possession at the time of the death of his brother. The finding of the jury settles the question of ownership and right of possession in the plaintiff of his half interest in the tools.

There is another contention that the action was barred, as the tools were appropriated and sold in October, 1922, and that the action was not brought until January 17, 1925. It was alleged that plaintiff had fraudulently concealed her claim of entire ownership in the tools and her disposition of them, and that he did not learn of her claim or wrongful conversion until February, 1924. He brought his action within two years after the discovery of the fraud and the knowledge that his property had been misappropriated and sold. Defendant had filed an inventory in the probate court listing the tools as the property of the estate, but plaintiff had not been cited to appear in

that proceeding, and according to the testimony did not have knowledge of her claim, concealment and misappropriation of his interest in the property. The possession she gained of his property was held in trust for the owner. Plaintiff had made no demand and there had been no refusal of his demand. It was held in *Auld v. Butcher*, 22 Kan. 400, that where A rightfully obtained possession of a bond owned by B and had later converted it to his own use, and there was nothing to show knowledge by B of the conversion by A and no demand by B for the return of the bond and a refusal by A, that the statute did not begin to run against B's cause of action for conversion until there had been a demand and refusal. But apart from that rule, the action of the defendant in selling property of the plaintiff, of which she had possession and had appropriated the proceeds of the sale, was based mainly on concealment and fraud, and as plaintiff was asking for relief because of the wrongful and fraudulent conversion of his property the action did not accrue until the discovery of the fraud. (R. S. 60-306.)

Finding no error in the record, the judgment is affirmed.