No. 46,007

FLOYD DeVORE, *Appellee* and *Cross-Appellant*, v. McCLURE LIVE-STOCK COMMISSION CO., INC., a Kansas Corporation, *Appellant* and *Cross-Appellee*, DALE YOUNG, RACHEL YOUNG and LARRY PERRY, *Defendants*.

(485 P. 2d 1013)

Opinion filed June 12, 1971.

*W. Jay Esco*, of Wichita, argued the cause and was on the briefs for the appellant and cross-appellee.

*Karl W. Friedel*, of Martin, Cooper, Churchill and Friedel, of Wichita, argued the cause, and *Dale H. Cooper*, of the same firm, was with him on the brief for the appellee and cross-appellant.

The opinion of the court was delivered by

HARMAN, C.: In district court the action was one for damages against a livestock commission company for conversion of hogs allegedly owned by plaintiff and sold by others to the commission company. In trial to the court plaintiff prevailed as to a part of his claim and the commission company has appealed. Plaintiff has cross-appealed as to the denial of the remainder of his claim.

On January 27, 1964 plaintiff Floyd DeVore entered into a written agreement with Dale Young. This writing, scant in nature, recited merely it was entered into by the parties "for the purpose of going into the hog business", that it was for a period of two years from March 1, 1964, plaintiff was to advance Young the sum of not to exceed $1,400 during the first six months "and after that, 50% of the net profit on the Hog Operations to each party" and further "[Young] to do all the work and management and handle the operations to the best of his ability and judgment". Plaintiff had previously known Young and had confidence in him, believing him to be honest and hard-working.

Hog raising was commenced under the foregoing arrangement. The method of operation was that plaintiff was to furnish all capital and physical facilities for the enterprise and Young was to furnish all labor and skill necessary in the purchase, feeding, breeding, raising and marketing of the hogs. Plaintiff was to maintain all business records. Hogs were to be marketed through McClure Livestock Commission Co., Inc., defendant-appellant herein. Plaintiff gave no directions to Young as to the name under which hogs should be marketed and gave no notice or directions to McClure respecting disposition of proceeds of hog sales made by Young.

In all, sales of more than 8,000 hogs in the sum of nearly $400,000 were made through McClure at the Union Stockyards at Wichita during the period of operations through the year 1966. These sales were all made by Young, either individually or by his stepson, Larry Perry, at Young's direction. The hogs were marketed under the following names: DeVore & Young, Dale Young, A. E. Perry, Rachel Young (Dale Young's wife) and Larry Perry, and consigned to McClure for sale. No hogs were ever marketed in plaintiff's name.

The procedure employed at the stockyards was as follows: Livestock was received and counted by an employee of the stockyards company; a drive-in record was made which record showed the name of the trucker, the name of the owner, the number and kind of animals, and the name of the commission company which was to handle the sale; the animals were unloaded, counted again by a stockyards company employee and delivered to pens assigned to the commission company; the animals were then sold by the commission company and delivered to the scales where a stockyards employee weighed them and issued a scales ticket; the scales ticket and a copy of the drive-in ticket were returned to the accounting office of the commission company; there a written account of the sale was made and a check for the net amount of the sale, after deductions, was made out in the name of the owner as shown by the drive-in record and delivered to the trucker, unless otherwise requested. As a matter of general procedure the commission company made no inquiry respecting ownership but relied on the name shown on the drive-in record.

At the end of the calendar years 1964, 1965 and 1966 an inventory of hogs on hand was taken and a profit and loss statement was prepared by plaintiff's accountant. The 1964 and 1965 inventories were made by Young; plaintiff made the 1966 inventory. Most of the hogs were sold in the name of DeVore & Young, a trade name chosen by Young. Young's usual custom was to endorse the commission company's checks made out to DeVore & Young over to plaintiff and periodically to receive back from plaintiff his share of the net profits. Plaintiff endorsed almost all the checks made out to De-Vore & Young. Eventually plaintiff discovered that Dale Young had not been accounting to him for all the hogs sold by Young through McClure, his defalcation having commenced in July, 1964. Briefly summarized, his delinquencies consisted of the following sales of 962 hogs for which Young kept the proceeds, depositing the funds in his personal bank account: In 1964, 1965 and 1966 sales in the name of Dale Young amounting to $31,800.46; in 1965 sales in the name of A. E. Perry amounting to $8,478.78; in 1965 and 1966 sales in the name of Larry Perry amounting to $5,678.25, and in 1964 sales in the name of Rachel Young amounting to $362.32, or a total default of $46,319.92. In all these instances except one the checks were made out by McClure in the name listed as the owner making the sale. In at least one instance Young endorsed

over to plaintiff a small check made out in Young's name, being the proceeds of livestock sold in Young's name. (Young was also guilty of converting to his own use a tractor and feed corn paid for by plaintiff—of no concern here).

The name A. E. Perry was a fictitious one used by Dale Young when he personally marketed some of the hogs; hogs sold by Larry Perry in his own name were so marketed at Young's specific direction and Perry turned most of the sale proceeds over to Young. Perry was hired and paid by Young to assist in the hog-raising enterprise.

The head of McClure's hog division knew who plaintiff was, knew Young was working for plaintiff in running the hog farm and on occasion had assisted Young in selecting hogs for marketing and transporting them to the stockyards; Young told this individual he had an arrangement to share the profits.

Plaintiff, upon discovering his loss sometime in January, 1967, first filed his suit for damages for conversion of his hogs against Dale Young, Rachel Young and Larry Perry. Thereafter, and on June 2, 1967, he filed an amended petition naming the McClure company as a party defendant. Issues were joined, trial was had at which the salient facts as outlined above were developed and the trial court made a series of separate sets of findings and conclusions.

The court, after crediting Young with $14,000 worth of property he turned over to plaintiff, computed the net amount due plaintiff from Young as a result of the latter's defalcation and entered judgment in plaintiff's favor and against Young for $33,747.23.

The trial court construed the applicable two-year statute of limitations as to McClure and determined plaintiff's injury was reasonably ascertainable when it had occurred and therefore part of his claim against McClure was barred so that plaintiff could not recover from McClure for any conversion occurring prior to June 1, 1965—two years prior to the date plaintiff filed his claim against McClure (this ruling comprises part of plaintiff's cross-appeal).

The trial court further found the relationship between plaintiff and Young was neither that of partners nor employer-employee but was one of joint adventure and that each, as a joint adventurer, had a proprietary interest in all hogs marketed. By reason of this finding the court concluded plaintiff could not recover from McClure for any hogs personally marketed by Young either in his own name or the fictitious name used by him and for which sales McClure gave the proceeds to Young (this ruling comprises the remainder

of plaintiff's cross-appeal). The court then found that after June 1, 1965 (or during the period not barred by the statute of limitations), Larry Perry in his own name marketed one hundred hogs belonging to the joint adventure for the sum of $5,160.06, which proceeds were retained by Perry and Young; that Perry had no authority from Young acting on behalf of the joint adventure to sell the hogs in his own name although he was specifically directed by Young so to do; that Young's directions to Perry to sell the hogs in his own name were not within the scope of the joint adventure between plaintiff and Young. The court further found McClure had not relied on any belief that Perry was the agent of the joint adventure but accepted without question his statement of ownership as shown on the drive-in tickets. The court concluded the Federal Packers and Stockyards Act (7 U. S. C. A. §§ 181-229) did not relieve livestock commission agents who are licensed as marketing agencies thereunder from tort liability for wrongful conversion, and it rendered judgment for plaintiff and against Larry Perry and also against McClure for $5,160.06, the reasonable value of the hogs marketed by Perry. This judgment against it is the subject of McClure's direct appeal. No appeal has been taken by any of the other defendants.

As indicated, the trial court specifically found the hog-raising operation between plaintiff and Dale Young was a joint adventure and that as such joint adventurer Young had a proprietary interest in all hogs marketed. Plaintiff has not appealed from this ruling and indeed, there was evidence in the record, including some we have not recited, to support that finding, although plaintiff attempted at trial level to establish purely an employer-employee relation.

In analyzing the rights of the appealing parties, we start with the common law rule that a factor or commission merchant who receives property from his principal, sells it under the latter's instructions and pays him the proceeds of the sale, is guilty of a conversion if his principal had no title thereto or right to sell the property, and generally the factor may not escape liability to the true owner for the value of the property by asserting he acted in good faith and in ignorance of his principal's want of title (32 Am. Jur. 2d, Factors and Commission Merchants, § 45; 35 C. J. S., Factors, § 57b). The basis for the factor's liability if he assists in a conversion, even though innocent, is the fact he stands in the shoes of his principal (*Birmingham v. Rice Bros.*, 238 Iowa 410, 26 N. W. 2d 39, 2

A. L. R. 2d 1108, cert. den. 332 U. S. 768, 92 L. ed. 353, 68 S. Ct. 79, reh. den. 332 U. S. 820, 92 L. ed. 397, 68 S. Ct. 151).

McClure, which was licensed as a marketing agency under the terms of the Federal Packers and Stockyards Act, first advances as an overall defense the contention that that act, which makes it the duty of every such marketing agency to furnish upon request, without discrimination, reasonable stockyard services, operates to relieve it from this common law rule of liability for conversion particularly in view of the fact such agencies are for regulatory purposes regarded as in the nature of public utilities. Although a few courts have taken this position our rule, as well as in most jurisdictions, is the act does not relieve livestock commission agents licensed thereunder as marketing agencies from tort liability for wrongful conversion (*Citizens State Bank v. Farmers Union Livestock Cooperative Co.*, 165 Kan. 96, 193 P. 2d 636; anno. 2 A. L. R. 2d 1124).

However, there are other exceptions to the common law rule and it is a defense that the factor was misled by the owner or that the owner consented to the sale (35 C. J. S., Factors, § 57b; *Ontario Livestock Comm. Co. v. Flynn*, 256 Iowa 116, 126 N. W. 2d 362).

Applying these principles to the case at bar we conclude the trial court correctly ruled that McClure was not liable to plaintiff for the value of the hogs sold personally by Dale Young. Young as a joint adventurer with plaintiff had a proprietary interest in all hogs marketed. Plantiff concedes this. Young was in complete command of marketing operations. He had specific authority from plaintiff to market the hogs through McClure and all the hogs were so marketed. The difficulty lay in his disloyalty to his co-venturer in his subsequent failure to pay over nearly 11½ percent of the proceeds. Plaintiff not only clothed Young with full indicia of title to the hogs, he directed Young to sell the hogs through McClure. Consent to the sales could not be more strongly evidenced. It followed that if Young had a right to market the hogs, then Mc-Clure, standing in his shoes, was not guilty of a conversion in selling the hogs and remitting the proceeds to Young. Unfortunately for plaintiff he had done nothing to alert McClure to his interest in the sale proceeds but relied completely on Young for a considerable period of time to account for them.

To avoid the impact of the finding of joint adventure plaintiff

principally relies on *Algeo v. Algeo,* 125 Kan. 245, 263 Pac. 1077. However, that action was one by an alleged partner against the other partner for an accounting of partnership affairs and did not involve a partner's right to convey title to a third person, and nothing therein aids plaintiff.

We hold, as did the trial court, that a commission agent who sells livestock for one joint adventurer who has an interest in an authority to market such livestock, and who delivers the proceeds of such sales to that joint adventurer, cannot thereafter be held guilty of conversion if the joint adventurer fails to account to his co-venturer for such proceeds and converts the same to his own use.

Turning to the direct appeal by McClure, we are unable to make valid distinction between the marketing of hogs by Young, either in his own or his fictitious name, and the marketing done by Larry Perry, for which the trial court held McClure liable. Under the joint adventure arrangement Young was to hire and pay for all help necessary. As such venturer he hired Perry and gave him specific directions as to the hogs marketed by him. Perry was thus Young's agent, in legal contemplation his acts became those of Young and he in fact accounted to Young for the proceeds of hogs marketed by him. Perry's retention of part of the proceeds was at Young's direction and would not alter the relation of the parties. Apparently the trial court in its ruling holding McClure liable for the hogs marketed by Larry but not for those sold by Young made a distinction between conversion of the livestock and conversion of the proceeds of the sale, but in each instance the proceeds actually went to Young, the person authorized to receive them under the joint agreement. We think the rules applicable to marketing by Young are applicable as well to that by Young's agent, hence we conclude the trial court erred in rendering judgment against McClure for the sales made by Perry.

In view of the determination made the other matters raised by both parties become moot. Upon McClure's direct appeal the money judgment against it is reversed; upon plaintiff's cross-appeal the judgment is affirmed.

APPROVED BY THE COURT.