No. 47,437

HOWARD NELSON, *Appellee,* v. HY-GRADE CONSTRUCTION AND MATERIALS, INC., A CORPORATION, *Appellant.*

(527 P. 2d 1059)

Opinion filed November 2, 1974.

*Charles F. Forsyth* and *Richard G. Tucker,* of Erie, argued the cause and *Clark M. Fleming,* also of Erie, was with them on the brief for the appellant.

*Robert V. Talkington,* of Iola, argued the cause, and *J. D. Conderman,* also of Iola, was with him on the brief for the appellee.

The opinion of the court was delivered by

OWSLEY, J.: This is an action to recover possession of two conveyors, as well as damages for their wrongful detention. Plaintiff Howard Nelson was awarded possession of both conveyors and damages in the sum of $370.00 per month for the period of wrongful detention. Defendant Hy-Grade Construction & Materials, Inc., appeals, alleging there was a valid contract of sale for the conveyors and the detention was not wrongful.

Plaintiff Nelson is a material producer and contractor in the crushed rock and limestone business in the Iola, Kansas, area. Defendant Hy-Grade, a corporation, is in the crushed rock and limestone business in the Parsons, Kansas, area. Iola Industries, Inc., purchased the old Lehigh Portland Cement plant at Iola in early 1971 and on May 30 and 31, held an auction at the cement plant

site. Prior to the auction, plaintiff purchased a 30 inch by 560 foot conveyor by private sale from Iola Industries. At the auction he purchased a 24 inch by 200 foot conveyor. Defendant, through its agent, George Burkhart, also attended the sale and purchased three conveyors from General Steel Company of Joplin, Missouri, a successful bidder at the sale.

After the sale, on or about June 9, 1971, plaintiff discussed with defendant his possible purchase of defendant's three conveyors. Defendant priced them at $8,000 and plaintiff agreed to buy them, payment to be made about June 20. This figure was written on a card, along with a description of the property, and initialed by plaintiff. The trial court found this to be an enforceable contract of sale, which was not questioned by either party.

A short time later plaintiff had another conversation with defendant concerning the sale of his two conveyors to defendant. At this point there is conflict of testimony as to the price. Apparently, plaintiff thought he was selling his conveyors for $10,500 in addition to the $8,000 he had contracted to pay defendant; and Burkhart, acting for defendant, thought plaintiff was selling said conveyors for $10,500, against which sum defendant would have an offset of $8,000 for the conveyors sold to plaintiff. Nothing in regard to this transaction was set down in writing.

Defendant, allegedly believing it had completed the sale, began removing the two conveyors from the Lehigh site, despite objections from plaintiff. After they were removed defendant sent a check to plaintiff for $2,500 as payment, but plaintiff returned it uncashed.

The trial court held that no valid contract for the sale of the two conveyors ever existed, and in any event enforcement was precluded by the statute of frauds. Judgment was rendered in favor of plaintiff for recovery of possession of the two conveyors and for damages in the sum of $370.00 per month for each month elapsing between July 14, 1971, and his recovery of possession; defendant, however, was to have credit on said damage amount for $8,000, together with interest thereon at eight percent per annum from July 14, 1971, to the date plaintiff took possession of the conveyors.

The recorded testimony clearly indicates that immediately upon agreeing on the sale of defendant's three conveyors to plaintiff a memorandum was exchanged and plaintiff agreed to pay defendant in full on June 20, 1971. At this point a final contract of sale was completed as to the first three conveyors. It was not until several

days later that any mention was made of the sale of plaintiff's two conveyors to defendant. There was no written contract and no clear understanding was reached as to the terms of that sale. The trial court upheld the validity of the first contract, but refused to recognize the second.

There can be no question as to the validity of the first contract whereby plaintiff purchased the three conveyors from defendant for $8,000. All the elements of a valid contract were obviously met and neither party objected to the ruling of the trial court that it was a valid and enforceable contract. The controversy centers around the oral contract of sale of plaintiff's two conveyors to defendant. It is the contention of defendant that the trial court erred when it held there was no meeting of the minds and enforcement was precluded by the statute of frauds.

K. S. A. 84-2-204 (1) provides a contract for the sale of goods may be formed by any manner of expression of the parties, including their actions. This section of the Uniform Commercial Code is expressly qualified by other provisions of the code. One of the provisions which limits this section is K. S. A. 84-2-201. Subsection (1) therein reads as follows:

"(1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing."

There was no contract in writing as to the sale of plaintiff's two conveyors. Consequently, the alleged contract clearly did not meet the requirements of K. S. A. 84-2-201 (1), and could not be the basis of a sale between the parties.

Defendant seeks to avoid this result by arguing that the oral contract falls within the exception to the statute of frauds contained in subsection (3) (c) of the same section, which provides:

"(3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable

. . . . . . . . . . . . . .

"(c) with respect to goods for which payment has been made and accepted or which have been received and accepted (section 84-2-606)."

The official UCC comment on this section states:

"2. 'Partial performance' as a substitute for the required memorandum can validate the contract only for the goods which have been accepted or for which payment has been made and accepted.

"Receipt and acceptance either of goods or of the price constitutes an unambiguous overt admission by both parties that a contract actually exists. If the court can make a just apportionment, therefore, the agreed price of any goods actually delivered can be recovered without a writing or, if the price has been paid, the seller can be forced to deliver an apportionable part of the goods. The overt actions of the parties make admissible evidence of the other terms of the contract necessary to a just apportionment. This is true even though the actions of the parties are not in themselves inconsistent with a different transaction such as a consignment for resale or a mere loan of money.

"Part performance by the buyer requires the delivery of something by him that is accepted by the seller as such performance. Thus, part payment may be made by money or check, accepted by the seller. If the agreed price consists of goods or services, then they must also have been delivered and accepted."

The exceptions apply only where the goods have been received and accepted, or where payment has been made and accepted. The record reveals the check given by defendant as payment was not accepted by plaintiff, but was returned uncashed. Likewise, the record discloses that plaintiff never consented to the removal of the equipment. He continually objected to defendant's taking of the equipment and attempted to enlist the aid of the sheriff in preventing the goods from being taken. Without the consensual giving up of the goods by the seller, it cannot be said that the buyer "received" the goods. In these circumstances the statute of frauds operates to invalidate the oral contract for the sale of plaintiff's two conveyors to defendant.

It necessarily follows that the trial court was correct in holding that the detention of the two conveyors by defendant was wrongful, and that plaintiff was entitled to possession of said conveyors. A conversion is an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another. The intent required is simply to use or dispose of the goods, and knowledge or ignorance of the actor as to their ownership has no influence in deciding the question of conversion. (*Watkins v. Layton*, 182 Kan. 702, 324 P. 2d 130.)

The remaining issue on appeal concerns the proper measure of damages. Defendant claims the trial court erred in fixing the value of plaintiff's two conveyors at $18,500. He also complains that the award of $9,990 resulted in an award of damages greater than the value of the property. He further argues the trial court's award of

two percent per month of the total value of the conveyors was arbitrary and speculative. A final attack is based on the claim the trial court used plaintiff's testimony which was irrelevant to ascertain the value of the property.

The general rule is that the measure of damages for conversion of personal property is the fair and reasonable market value of the property converted at the time of the conversion. (*Wingerson v. Tucker,* 175 Kan. 538, 265 P. 2d 842.) It is also the rule in this state that damages for the wrongful deprivation of the use of specific property may be measured by its rental value. (*Tobin Construction Co. v. Holtzman,* 207 Kan. 525, 485 P. 2d 1276.) We conclude the trial court properly applied the foregoing rule as to damages for wrongful deprivation of the use of personal property. We also conclude that its findings of fact with reference to damages were supported by substantial competent evidence. Such findings will not be disturbed on appeal.

Although defendant raised questions on appeal as to his right to compensation for dismantling the conveyors and plaintiff's duty to mitigate damages, these issues were not presented in the trial court. An issue not presented to the trial court cannot be a subject for appellate review. (*State v. Osbey,* 213 Kan. 564, 517 P. 2d 141.)

Affirmed.