The FIRST NATIONAL BANK OF
AMARILLO, Plaintiff,

v.

SOUTHWESTERN LIVESTOCK,
INC., Defendant.

No. 85–1021–K.

United States District Court,
D. Kansas.

Sept. 9, 1985.

---

Don Sunderland of Gibson, Ochsner & Adkins, Amarillo, Tex., and Don W. Bostwick of Adams, Jones, Robinson & Malone, Wichita, Kan., for plaintiff.

Jim H. Goering of Foulston, Siefkin, Powers & Eberhardt, Wichita, Kan., E. Lawrence Oldfield, Ltd. and Jim Malysiak of Freeman, Freeman, & Salzman, Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

This is a conversion action against a Kansas auction house for the wrongful sale of livestock in which plaintiff held a security interest. Defendant filed a motion for summary judgment on the ground plaintiff failed to perfect its security interest in Kansas within four months after the livestock were brought into this state from Oklahoma. The Court concludes, however, an unperfected secured creditor may maintain an action for conversion against its debtors' agent. Defendant's motion for summary judgment is denied.

Plaintiff First National Bank of Amarillo (FNB) is a Texas bank. In June and July, 1983, it loaned a total of $875,000.00 to Dean and Moeta Newman, individually and d/b/a Newman Farms, and to Larry Paul, all of Oklahoma. Plaintiff perfected its security interest in Oklahoma, in all cattle owned or thereafter acquired by the debtors. In September, 1983, contrary to the security agreements and without informing FNB of their plans, the Newmans transported 76 steers and 70 heifers across the state line into Kansas, where the cattle were sold at auction by defendant Southwestern Livestock, Inc. (Southwestern). Defendant sold the livestock purely on a commission basis and did not have actual notice of the security agreements or the Oklahoma financing statements covering the cattle. The net proceeds of the sale, $47,974.70, were paid by check to Mutual Feeders, Inc., another business run by the Newmans, but the money was never in turn remitted to the bank. At no time within the four months after the cattle were brought into Kansas did FNB perfect its security interest in this state.

### I. *The Four-Month Rule*

Whenever collateral subject to a perfected security interest in one jurisdiction is brought into Kansas, K.S.A. 84–9–103(1)(d) requires that the secured creditor perfect its security interest in this state within four months after the transfer or before expiration of the perfected security interest in the former jurisdiction, whichever period first expires. Where the secured creditor fails to act within the appropriate time period, "the security interest becomes unperfected at the end of that period and is thereafter deemed to have been unperfected as against a person who became a purchaser after removal."

■ Southwestern initially contended that because FNB failed to perfect its security interest in Kansas within four months after the cattle entered this state, plaintiff was not a secured creditor and could not maintain this suit for conversion. The bank correctly countered that even though it failed to comply with the four-month rule, it was as a result merely an *unperfected* secured creditor, not an *unsecured* creditor. In response, Southwestern then argued that even an unperfected secured creditor may not recover from an auctioneer damages for conversion.

Commenting on a similar situation, Professor Barkley Clark notes:

> It is clear by the four-month rule that [a bona fide] purchaser would have priority, assuming that the [collateral] was bought for value and without actual knowledge of the Bank's security interest. The purchaser need not qualify as a buyer in the ordinary course of business. Bank's perfection lapsed four months after removal to [the new state]. Bank is left with a cause of action against its debtor for conversion. Failure to police the defalcating debtor would be fatal in such a situation. And the same result would obtain if the competitor were the debtor's trustee in bankruptcy, a levying creditor, or the competing secured creditor in the state of removal.

Clark, The Law of Secured Transactions Under the Uniform Commercial Code, ¶ 9.4[1] (1980). Noticeably absent from the list of persons entitled to priority over the bank's interest are auctioneers, brokers, commission merchants, and the like. That is the issue in this case: may an unperfected secured creditor maintain an action against, and recover damages for conversion from, an auction company which sells livestock subject to a security interest created by plaintiff's debtors?

■ Before turning to the merits of defendant's motion, we note the parties agree Kansas law applies to this case. K.S.A. 84–9–103(1)(b) states "perfection and the effect of perfection or non-perfection of a security interest in collateral are governed by the law of the jurisdiction where the collateral is when the last event occurs on which is based the assertion that the security interest is perfected or unperfected." Under this rule, where the security interest is perfected in one jurisdiction and the collateral is then removed to another, the failure to maintain perfection in the latter jurisdiction is the "last event" to which the rule refers. *Id.*, Official UCC Comment 1. As a result of FNB's failure to perfect its security interest in Kansas, the bank's claims are controlled by Kansas law governing priorities and liability for conversion.

## II. *The Auction House as a "Purchaser"*

Southwestern argues it qualifies as a "purchaser" of the livestock under K.S.A. 84–9–103(1)(d), entitled to priority over plaintiff's unperfected security interest. A "purchaser" is one who takes

> ... by sale, discount, negotiation, mortgage, pledge, lien, issue or reissue, gift or any other voluntary transaction *creating an interest in property.*

K.S.A. 84–1–201(32), (33) (emphasis added). This broad definition encompasses any voluntary transaction creating an interest in property whether or not there is a price or other consideration. *Id.*, 1983 Kansas Comment (32).

Defendant's authorities for the proposition it qualifies as a "purchaser" are either distinguishable from this case or provide little guidance. In *United States v. Burnette-Carter Co.*, 575 F.2d 587 (6th Cir. 1978), *cert. denied* 439 U.S. 996, 99 S.Ct. 596, 58 L.Ed.2d 669 (1979), the Court faced similar facts regarding sale of livestock brought across state lines, followed by the secured creditor's failure to perfect in the removal state within four months. Under the 1962 Official Text of the UCC, the Court held the defendant livestock auctioneer, who had unauthorizedly sold property

subject to plaintiff's security interest, was liable for conversion because plaintiff's security interest remained perfected in the removal state during that four-month period. The Court went on to opine that a different result would be required under the 1972 Official Text of the UCC, then under consideration by the states, because plaintiff's unperfected status at the end of the four-month period would relate back. *Burnette-Carter Co.*, 575 F.2d at 592. The statement regarding the consequences of plaintiff's unperfected status is mere dicta, however, because the case was not decided under the 1972 Text. Southwestern also relies on *United States v. Squires*, 378 F.Supp. 798 (S.D.Ia.1974), which held under similar facts that the party who fails to perfect its security interest in the "removal" state within four months has a junior interest to a *buyer for value* who has no knowledge or notice of the security interest after the lapse of four months without perfection in the removal state. *Squires* provides defendant no support for its position in this case because Southwestern does not qualify as a buyer for value. Lastly, Southwestern points to three cases from the federal district court of Minnesota holding sales agents qualify as "purchasers" of the cattle after removal of the collateral to the new jurisdiction. *United States v. Kost Security, Inc.*, No. 3–79–12 (D.Minn. 1981) (order for summary judgment); *Swift County Bank v. Siouxland Farmers Livestock Sales, Inc.*, No. 3–76–305 (D.Minn. 1980) (order for summary judgment); and *United States v. Kost Security, Inc.*, No. 3–76–474 (D.Minn.1978) (order for summary judgment). Those cases, however, are barren of any analysis supporting that Court's bald conclusions, and they provide us no help in resolving the issue in this case.

■ Southwestern correctly contends that to qualify as a "purchaser" under K.S.A. 84–9–103(1)(d) one need not give value for the collateral. Nevertheless, one does need to acquire some interest in the property. K.S.A. 84–1–201(32), (33); 1983 Kansas Comment (32). The flaw in Southwestern's argument is that it fails to show what "interest" it acquired in the cattle, as that term is used in these Code sections. Defendant makes no showing it ever acquired title to the livestock in its own name. Southwestern does suggest it acquired an agister's lien under K.S.A. 58–207 and 58–220, which lien qualifies as the requisite interest to raise defendant to the status of purchaser. But the primary requirement for priority of a statutory lienor is that he retain possession of the property rather than return possession or control to the owner; thus the right to a statutory lien is waived as to all property other than that which remains in actual possession of the party. *Northeast Kansas Prod. Cred. Ass'n v. Ferbache*, 236 Kan. 491, 494, 693 P.2d 1152 (1985). Any claim Southwestern may have had to a statutory agister's lien was waived when it surrendered possession of the cattle to the buyer, and the lien cannot now be relied on as a right superior to an unperfected security interest.

■ At best, Southwestern acquired a mere possessory interest in the cattle by holding them for sale. The clear thrust of the Kansas UCC is that one must at least acquire a *property* interest in the collateral to qualify as a purchaser. Mere possession of goods is not a sufficient right to enable the possessor to grant another party a security interest therein. *Pontchartrain State Bank v. Poulson*, 684 F.2d 704, 707 (10th Cir.1982). Given that principle, it would be anomalous to now say mere possession is nevertheless a sufficient right to prevail over a prior security interest, albeit unperfected. This Court concludes, once again, that an auctioneer, sales agent, commission merchant or the like, which merely sell collateral on the debtors' behalf while acquiring no property interest therein, do not qualify as "purchasers" of the collateral under the Kansas UCC. *See Garden City Prod. Cred. Ass'n v. International Cattle Systems*, 32 U.C.C.Rep.Serv. 1207,

1210 (D.Kan.1981); *cf. Commercial Bank at Alma v. Hales*, 281 Ark. 439, 665 S.W.2d 857, 38 U.C.C.Rep.Serv. 680 (1984) (identical conclusion reached under Arkansas UCC; auctioneer merely a selling agent, not a purchaser).

### III. *The Auction House as an Agent*

Southwestern next argues that even if it does not qualify as a purchaser, as the debtors' agent it is not liable for conversion because the ultimate buyer for value acquired the cattle free of plaintiff's security interest under K.S.A. 84–9–301. For support defendant relies on *United States v. Hext*, 444 F.2d 804 (5th Cir.1971). *Hext* held that selling agents are not liable as converters where the buyers take free of the prior security interest under UCC § 9–307(1). The Fifth Circuit Court of Appeals reached this conclusion relying on Restatement (Second) of Torts, § 233(1) (1965), which provides:

> ... one who as agent or servant of a third person disposes of a chattel to one not entitled to its immediate possession in consummation of a transaction negotiated by the agent or servant, is subject to liability for a conversion to another who, as against his principal or master, is entitled to the immediate possession of the chattel.

The ultimate buyers of the collateral in *Hext* acquired good title and were therefore entitled to immediate possession. The Court thus concluded the acts of the defendant agents in transferring the collateral to the buyers were not tortious as against the prior secured party. 444 F.2d at 814–816.

The difficulty with Southwestern's argument in this case is that Kansas courts do not, at least in the commercial law context, employ the Restatement analysis underlying *Hext*. The Kansas UCC does not alter application of the common law rules governing liability for conversion. K.S.A. 84–1–103. Those common law rules are well established:

> "... [A] factor or commission merchant who receives property from his principal, sells it under the latter's instructions and pays him the proceeds of the sale is guilty of a conversion *if his principal had no title thereto or right to sell the property,* and generally the factor may not escape liability to the true owner for the value of the property by asserting he acted in good faith and in ignorance of his principal's want of title.... The basis for the factor's liability if he assists in a conversion, even though innocent, is the fact he stands in the shoes of his principal...."

*North Central Kan. Prod. Cred. Ass'n v. Washington Sales Co.*, 223 Kan. 689, 698, 577 P.2d 35 (1978), quoting *Devore v. McClure Livestock Commission Co., Inc.*, 207 Kan. 499, 503, 485 P.2d 1013 (1971) (emphasis added); *see also First Nat'l Bank & Tr. Co. v. Atchison County Auction Co.*, 10 Kan.App.2d 382, 389, 699 P.2d 1032 (1985) (restating and applying rule, holding auction company liable for conversion because its principal, plaintiff's debtor, was unauthorized to sell cattle). The intent required for conversion is satisfied by the use or disposition of goods belonging to another; knowledge or ignorance as to ownership of goals is irrelevant. *Nelson v. Hy-Grade Const. & Materials, Inc.*, 215 Kan. 631, 527 P.2d 1059 (1974). Clearly, in deciding these questions, Kansas courts look not to the validity of the title acquired by the ultimate buyer for value, but only to the debtor's authority to sell the collateral. *See People's Nat'l Bank & Trust Co. v. Excel Corp.*, 236 Kan. 687, 695 P.2d 444 (1985); *North Cent. Kan. Prod. Cred. Ass'n v. Washington Sales Co.*, 223 Kan. 689, 577 P.2d 35 (1978); and *First Nat'l Bank & Tr. Co. v. Atchison County Auction Co.*, 10 Kan.App.2d 382, 699 P.2d 1032 (1985).

Consistent with the goals of the UCC, the Kansas approach is preferable. This Court is not persuaded by *Hext's* reliance on Restatement (Second) of Torts, § 233(1).

Even assuming the Fifth Circuit was correct in equating the buyer's entitlement to possession with the strength of title acquired after sale, the premise of § 233(1) is that the buyer acquires all, but only, the degree of title previously possessed by the seller; therefore, the strength of the buyer's title is considered prima facie evidence of the validity of the sale. This premise is clear in the illustrations following § 233(1):

1. A, as agent for B, negotiates a purchase from C of goods stolen from D. A delivers the goods to B. A is subject to liability to D for conversion.

2. A, as agent for B, negotiates a sale to C of goods which B has stolen from D. A delivers the goods to C. A is subject to liability to D for conversion.

In contrast to these situations, under the unique provisions of the UCC a buyer may acquire bona fide title to property even when the sellers, as in this case, had none to convey. That simply does not mean, as defendant would have the Court believe, that the agent's sale of the chattel was proper. The premise of § 233(1), that the ultimate buyer acquires only such title as the seller has to convey, is not always true under the UCC. Therefore, in these cases the buyer's title may not be looked to as prima facie evidence of whether the agent's sale was proper as against the sellers' creditor. Section 233(1) does not govern the question of the agent's liability for conversion.

■ The critical factor, rather, is the debtors' authorization to sell. Unless otherwise provided by the UCC, a security agreement is effective according to its terms between the parties, against purchasers of the collateral and against creditors. K.S.A. 84–9–201. The failure to perfect one's security interest does not impair the secured party's right to proceed against the debtors. Clark, The Law of Secured Transactions, ¶¶ 3.2[2], 9.4[1]. In this case defendant nowhere claims the Newmans, or Southwestern derivatively, were authorized to sell the cattle. Under

the law allowing an unperfected secured creditor to proceed against its debtor for conversion, so may the plaintiff in this case proceed against the debtors' agent, which merely "stands in the shoes of his principal" regardless of the rights acquired by the ultimate buyer for value.

In counselling against this holding, defendant warns against creating a "new type of strict liability" in these cases. It fails to recognize, however, conversion has always been a strict liability tort. *See E.F. Hutton & Co., Inc. v. Helmer, et al.,* No. 79–1054 (D.Kan.1982) (order overruling motion for summary judgment); *United States v. Gallatin Livestock Auction, Inc.,* 448 F.Supp. 616 (W.D.Mo.1978). The salutary purposes behind an auction company's liability in these cases is well established. Although an auctioneer's role may be a sympathetic one, the justification generally given is that he is in the best position to search the records for security agreements covering the cattle to be sold at auction, and that the imposition of liability provides greater protection for secured creditors. *See United States v. Sommerville,* 324 F.2d 712 (3d Cir.1964), *cert. denied* 376 U.S. 909, 84 S.Ct. 663, 11 L.Ed.2d 608 (1964); *United States v. Equity Livestock Auction Market,* 575 F.Supp. 1524 (E.D. Wis.1983); Annot., 96 A.L.R.2d 208 (1964). In the farm products rule of the UCC, the drafters and the state legislatures deemed it desirable to afford special protections to agricultural lenders. But even aside from the agricultural aspects of this case, to hold for the defendant would create an ill-conceived rule which, while prohibiting a debtor from selling property encumbered by an unperfected security interest, would allow the debtor's agent to do so with virtual immunity. Such a rule would easily lend itself to abuse, fraud, and collusion, eviscerating the UCC protections afforded all secured lenders, agricultural or otherwise.

■ Accordingly, the Court holds an unperfected secured creditor may sue and

recover damages for conversion from an auction company which was without authorization sold collateral encumbered by plaintiff's security interest. *See United States v. Friend's Stockyard, Inc.*, 600 F.2d 9 (4th Cir.1979); *cf. Mammoth Cave Prod. Cred. Ass'n v. Oldham*, 569 S.W.2d 833 (Tenn.Ct.App.1977) (holding perfection unnecessary for PCA to assert its security interest against defendant sales warehouse in a conversion action).

### IV. *The Federal Packers and Stockyards Act*

■ Lastly, Southwestern contends it cannot be held liable for conversion because it is bound to serve any and all customers under the dictates of the Federal Packers and Stockyards Act, 7 U.S.C. § 181 *et seq.* (1970). Defendant argues it is required by the Act to serve all customers without discrimination or difference, and it should therefore not be held liable for accepting and selling livestock subject to a security interest. The Court concludes, however, the Act was not intended to shield auction companies from liability for wrongful sales of livestock covered by security interests. Defendant's argument is not original, and it has been rejected by virtually all of the numerous courts which have addressed it previously. *See, e.g., United States v. Matthews*, 244 F.2d 626 (9th Cir. 1957); *United States v. Squires*, 378 F.Supp. 798 (S.D.Ia.1974); *Farmers State Bank v. W.M. Stewart*, 454 S.W.2d 908 (Mo.1970); and *First National Bank of Pipestone v. Siman*, 67 S.D. 118, 289 N.W. 416 (1939).

IT IS ACCORDINGLY ORDERED this 9 day of September, 1985, that defendant's motion for summary judgment is denied. Counsel for both parties shall appear in chambers in person or by telephone on September 27, 1985, at 1:30 P.M., for a status conference, at which time the Court will set a date for pretrial conference.