### The FIRST NATIONAL BANK OF AMARILLO, Plaintiff–Appellee,

v.

### SOUTHWESTERN LIVESTOCK, INC., Defendant–Appellant.

#### No. 86–1906.

United States Court of Appeals, Tenth Circuit.

Oct. 17, 1988.

Rehearing Denied Nov. 14, 1988.

---

James T. Malysiak of Freeman, Freeman & Salzman, Chicago, Ill. (Jim H. Goering of Foulston, Siefkin, Powers & Eberhardt, Wichita, Kansas, and E. Lawrence Oldfield, Chicago, Ill., with him, on the briefs), for defendant-appellant.

Don D. Sunderland (John Huffaker of Gibson, Ochsner & Adkins, Amarillo, Tex., and Donald W. Bostwick of Adams, Jones, Robinson & Malone, Wichita, Kan., with him, on the brief), for plaintiff-appellee.

Before LOGAN, McWILLIAMS, and TIMBERS *, Circuit Judges.

LOGAN, Circuit Judge.

In this diversity action, plaintiff First National Bank of Amarillo, Texas (the Bank) sued defendant Southwestern Livestock, Inc. (Southwestern), a Kansas livestock auction house, for conversion of certain cattle in which the Bank had an interest as an unperfected secured creditor. The district court entered judgment for the Bank based on the parties' stipulation of facts and the court's earlier order denying Southwestern's motion for summary judgment. *See First Nat'l Bank v. Southwestern Livestock, Inc.,* 616 F.Supp. 1515 (D.Kan.1985). In the stipulation Southwestern reserved the right to appeal the denial of its summary judgment motion. On appeal, we must decide whether an auction house, which acts as the livestock owner's agent, is liable in conversion to a secured creditor of the owner, whose agreement denied the owner authority to sell the livestock; and, if so, whether the fact that the buyers of the auctioned cattle took free of the security interest, or that the creditor's failure to perfect its security

---

* The Honorable William H. Timbers, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

interest in Kansas, should change the result.

The Bank loaned money to Dean and Moeta Newman of Mutual, Oklahoma, to help finance their cattle operation and took a security interest in the cattle as collateral for the loans. The Bank properly perfected the security interest in Oklahoma. Subsequently, in September and October 1983, the Newmans sold some of the cattle in Kansas without the Bank's consent and in violation of the security agreement. These sales were conducted by Southwestern through its auction barn in Dodge City, Kansas. Southwestern sold the cattle on a commission basis and did not have actual knowledge of the Bank's security interest. Southwestern deducted its commission and paid the net sales proceeds by check to Mutual Feeders, a business operated by the Newmans. Neither the Newmans nor Mutual Feeders remitted the proceeds to the Bank. At no time did the Bank file a financing statement in Kansas.

## I

■ The Uniform Commercial Code (UCC) does not address the conversion liability of commission agents. Thus, as the district court recognized, Southwestern's liability must be determined by an analysis of the Kansas common law concerning liability for conversion.[1] *See* Kan.Stat.Ann. §§ 84-1-103; *United States v. Hext*, 444 F.2d 804, 811 n. 21 (5th Cir.1971); *United States v. New Holland Sales Stables, Inc.*, 619 F.Supp. 1162, 1163, 1164 (E.D.Pa.1985); Kershen & Harden, *Congress Takes Exception to the Farm Products Exception of the UCC: Retroactivity and Preemption*, 36 Kan.L.Rev. 1, 67–68 (1987).

According to the Kansas Supreme Court, "a factor or commission merchant who receives property from his principal, sells it under the latter's instructions and pays him the proceeds of the sale, is guilty of a conversion if his principal had no ... right to sell the property, and generally the factor may not escape liability to the true owner for the value of the property by asserting he acted in good faith and in ignorance of his principal's want of title. The basis for the factor's liability if he assists in a conversion, even though innocent, is the fact he stands in the shoes of his principal."

*DeVore v. McClure Livestock Comm'n Co.*, 207 Kan. 499, 503, 485 P.2d 1013, 1016–17 (1971) (addressing conversion liability of a livestock auction house) (citations omitted); *see also Nelson v. Hy-Grade Constr. & Materials, Inc.*, 215 Kan. 631, 634, 527 P.2d 1059, 1062 (1974) ("The intent required [for conversion liability] is simply to use or dispose of the goods, and knowledge or ignorance of the actor as to their ownership has no influence in deciding the question of conversion."); *Watkins v. Layton*, 182 Kan. 702, 707, 324 P.2d 130, 134 (1958) (same). This rule has been applied consistently to determine the conversion liability of commission agents who sold cattle that were subject to UCC security interests. *See, e.g., North Cent. Kan. Prod. Credit Ass'n v. Washington Sales Co.*, 223 Kan. 689, 697–98, 577 P.2d 35, 41–42 (1978); *First Nat'l Bank & Trust Co. v. Atchison County Auction Co.*, 10 Kan.App.2d 382, 389, 699 P.2d 1032, 1038 (1985); *accord Sanborn County Bank v. Magness Livestock Exch.*, 410 N.W.2d 565, 567 (S.D.1987); *see also Production Credit Ass'n v. Equity Coop Livestock Sales Ass'n*, 82 Wis.2d 5, 261 N.W.2d 127, 128 (1978).

Kansas courts have recognized only two exceptions to the general rule that a commission agent is liable in conversion, even if it has no knowledge of competing interests, if its principal was without authority to sell the collateral: the secured party either consented to the sale or misled the

---

1. The parties agree that Kansas law controls the disposition of this case. Kan.Stat.Ann. § 84-9-103(1)(b) provides that "perfection and the effect of perfection or non-perfection of a security interest in collateral are governed by the law of the jurisdiction where the collateral is when the last event occurs on which is based the assertion that the security interest is perfected or unperfected." When the security interest is perfected in one state (Oklahoma), and subsequently removed to another state (Kansas), the law of the state of removal governs the effect of perfection or nonperfection. *Id.* comment 1.

auctioneer about the debtor's authority to sell. *See DeVore*, 207 Kan. at 504, 485 P.2d at 1017. These exceptions are reflected in Kan.Stat.Ann. § 84–9–306(2), which provides that "a security interest continues in collateral notwithstanding sale ... thereof unless the disposition was *authorized* by the secured party in the security agreement or otherwise." (emphasis added). Neither exception is applicable to the case at bar.

Instead of specifically arguing that this case fits into one of the established exceptions, Southwestern contends that the district court's imposition of liability upon it when it had no knowledge of competing interests creates a form of strict liability for auctioneers unknown to Kansas law. This argument fails to recognize that conversion *is* a strict liability tort. *See Centerre Bank v. New Holland Div. of Sperry Corp.*, 832 F.2d 1415, 1423 (7th Cir.1987); *United States v. Gallatin Livestock Auction, Inc.*, 448 F.Supp. 616, 621 (W.D.Mo.), *aff'd per curiam*, 589 F.2d 353 (8th Cir. 1978); *United States v. Topeka Livestock Auction, Inc.*, 392 F.Supp. 944, 948 (N.D. Ind.1975); 1 F. Harper, F. James & O. Gray, *The Law of Torts* § 2.10 (2d ed. 1986). Although subjecting an innocent commission agent to conversion liability may seem harsh,[2] Kansas courts consistently have declared that the agent's good faith or lack of knowledge of the security interest is not a defense. *See, e.g., DeVore*, 207 Kan. at 503, 485 P.2d at 1016–17; *Atchison County Auction*, 10 Kan.App.2d at 389, 699 P.2d at 1038.

The Bank's security agreement prohibited the Newmans from selling the cattle without the Bank's consent. Southwestern does not allege that the Bank waived its security interest or authorized the sales in question. Because the Newmans were not

authorized to sell the cattle, Southwestern, acting as the Newmans' agent, also had no authority. Southwestern, then, is liable for conversion under Kansas law unless other factors in this case relieve it of liability.

## II

■ Southwestern argues that it is relieved from conversion liability because the buyers of the cattle took free of the Bank's security interest.[3] In Kansas, however, whether the buyer of secured property takes free of the underlying security interest is irrelevant to the conversion liability of the auctioneer. The liability of an auctioneer depends solely on the authority of its principal (the secured party's debtor) to sell the collateral. *See Washington Sales Co.*, 223 Kan. at 697–98, 577 P.2d at 41–42; *Atchison County Auction*, 10 Kan.App.2d at 389, 699 P.2d at 1038. Simply put, if the sale was authorized, the auctioneer is not liable; if the sale was not authorized, the auctioneer is liable.

Southwestern, however, argues that the Kansas Supreme Court would adopt the apparent limitations on an auctioneer's liability embodied in *Restatement (Second) of Torts* § 233(1) (1965) [hereinafter *Restatement*], which provides as follows:

"Except as stated in Subsection (4), one who as agent or servant of a third person disposes of a chattel to *one not entitled to its immediate possession* in consummation of a transaction negotiated by the agent or servant, is subject to liability for a conversion to another who, as against his principal or master, is entitled to the immediate possession of the chattel."

(emphasis added); *see also id.* § 235(1). Southwestern asserts that because the buyers of the cattle in question took free of the

---

**2.** We note that by an enactment effective December 24, 1986, Congress has preempted this common law rule. Food Security Act of 1985, § 1324, 7 U.S.C. § 1631. Although the exact parameters of the new law are in some doubt, *see* Kershen & Hardin, *supra* at 35–37, it clearly does not apply to the instant case.

**3.** The Bank's failure to file a financing statement in Kansas renders its security interest un-

perfected as against a purchaser after removal. Kan.Stat.Ann. § 84–9–103(1)(d). For purposes of this argument we assume the buyers of the cattle took free of the Bank's security interest under Kan.Stat.Ann. § 84–9–301(1)(c), which provides that an unperfected security interest is "subordinate to the rights of ... a buyer of farm products in ordinary course of business."

Bank's security interest and thus *were* entitled to immediate possession, Southwestern cannot be liable for conversion. *See Hext,* 444 F.2d at 815–16. No Kansas court has ever discussed *Restatement* § 233 and our task is to predict whether the Kansas Supreme Court would apply this provision in a case like that at bar. *Daitom, Inc. v. Pennwalt Corp.,* 741 F.2d 1569, 1574 (10th Cir.1984).

Under Southwestern's interpretation of *Restatement* § 233, a commission agent's liability depends on whether the buyers from the auction house would be liable for conversion. As noted above, Kansas law focuses exclusively on the authority of the agent's principal to sell the collateral; whether the buyer would take free of the security interest is irrelevant. Application of this section in the instant case would mark a dramatic departure from well-established Kansas law, and Southwestern has offered no reason why the Kansas Supreme Court would take this step.

Moreover, we doubt that the phrase "one not entitled to its immediate possession" was intended to limit the liability of auctioneers based on whether the transferee obtained good title. *Restatement* § 233(1) is made subject to subsection (4), which states a single exception based upon passage of good title: excusing from liability agents who transfer negotiable instruments under circumstances in which the transferees become holders in due course. *See Restatement* § 233(4) comments c–e; Dugan, *Buyer–Secured Party Conflicts Under Section 9–307(1) of the Uniform Commercial Code,* 46 U.Colo.L.Rev. 333, 358 & n. 90 (1975). We believe the better interpretation of *Restatement* § 233(1) is that the agent is not liable for conversion if its transferee had a *preexisting* and superior right to possession. *See Restatement* § 235(1) comment d (construing similar provision); Nickles, *Enforcing Article 9 Security Interests Against Subordinate Buyers of Collateral,* 50 Geo.Wash.L.Rev. 511, 524 n. 53 (1982) (adopting this interpretation and criticizing *Hext* ). For the rea-

sons stated, we believe the Kansas Supreme Court would hold that whether buyers from Southwestern obtained good title is irrelevant to determining Southwestern's liability for the sale.

## III

█ Next, Southwestern claims that it is not liable in conversion because the Bank failed to comply with Kan.Stat.Ann. § 84–9–103(1)(d), which provides in relevant part as follows:

"When collateral is brought into and kept in this state while subject to a security interest perfected under the law of the jurisdiction from which the collateral was removed, the security interest remains perfected, but if action is required by part 3 of this article to perfect the security interest, (i) if the action is not taken before ... the end of four months after the collateral is brought into this state ... the security interest becomes unperfected at the end of that period and is thereafter deemed to have been unperfected as against a person who became a purchaser after removal...."

Because the Bank never filed a financing statement in Kansas as required by Kan. Stat.Ann. § 84–9–302(1), its security interest is deemed to have been unperfected as to any "purchaser" after removal. *See Victory Nat'l Bank v. Stewart,* 6 Kan.App. 2d 847, 636 P.2d 788, 792 (1981). Southwestern contends that it obtained an agister's lien on the cattle pursuant to Kan. Stat.Ann. § 58–220 and that this lien is sufficient to elevate it to the status of an Article Nine "purchaser." [4]

We need not decide whether an agister's lien is sufficient to convert Southwestern from merely a commission agent to a "purchaser" nor even if Southwestern obtained an agister's lien; Southwestern cannot escape conversion liability under Kansas law even if it is a "purchaser." If Southwestern is a "purchaser," § 84–9–301(1)(d) provides only that the Bank's security interest

---

**4.** A "purchaser" is a person who takes "by sale, discount, negotiation, mortgage, pledge, lien, issue or reissue, gift or any other voluntary trans-

action creating an interest in property." Kan. Stat.Ann. § 84–1–201(32), (33).

is unperfected as to it. As we have noted previously, neither this UCC provision nor any other addresses the liability of an auctioneer for selling collateral subject to a security interest, perfected or not. Thus, the general Kansas law of conversion controls [5] and lack of knowledge of the Bank's security interest will not relieve Southwestern from liability. *See Watkins,* 182 Kan. at 707, 324 P.2d at 134; *Nelson,* 215 Kan. at 634, 527 P.2d at 1062; *DeVore,* 207 Kan. at 503, 485 P.2d at 1017; *Atchison County Auction,* 10 Kan.App.2d at 389, 699 P.2d at 1038. All of the Kansas cases holding an auctioneer liable for conversion despite its good faith and lack of knowledge have dealt with sales in violation of perfected security interests. But because the Kansas cases make the commission merchant liable because it stands in the principal's shoes, and not based upon any perception of duty of inquiry or action by anyone, we can discern no basis to distinguish between the liability of an auctioneer based on the debtor's violation of a perfected security interest and the violation of an unperfected security interest. *See United States v. Friend's Stockyard, Inc.,* 600 F.2d 9 (4th Cir.1979) (holding an auctioneer liable for conversion when sales violated an unperfected security interest); *Commercial Bank v. Hales,* 281 Ark. 439, 665 S.W.2d 857 (1984) (same); Kershen & Hardin, *supra,* at 14 (noting that auctioneers do not prevail over unperfected secured parties).

The cases cited by Southwestern do not persuade us otherwise. In *United States v. Burnette–Carter Co.,* 575 F.2d 587, 592 (6th Cir.), *cert. denied,* 439 U.S. 966, 99 S.Ct. 596, 58 L.Ed.2d 669 (1978), the Sixth Circuit expressed the view that under the 1972 version of the UCC a commission agent would not be liable for conversion if the secured party's interest was unperfected. The case, however, was decided under

the 1962 text and the court's brief statement was dicta. More importantly, the court apparently reached this conclusion because it believed that an unperfected security interest would not be valid. *See id.* at 588, 589. This conclusion was erroneous—an unperfected security interest is valid and enforceable. *Farmers State Bank v. Cooper,* 227 Kan. 547, 554, 608 P.2d 929, 935 (1980); *Kansas State Bank v. Overseas Motosport, Inc.,* 222 Kan. 26, 29, 563 P.2d 414, 417 (1977); Kan.Stat.Ann. § 84–9–203 & comment 1.

In *United States v. Squires,* 378 F.Supp. 798 (S.D. Iowa 1974), also decided under the 1962 text, the defendant appeared to be the *buyer* of the collateral as well as the auctioneer, and the court simply held that a secured party who failed to perfect the security interest under UCC § 9–103(1)(d) would have a "junior interest to the *buyer for value." Squires,* 378 F.Supp. at 804 (emphasis added). Moreover, the *Squires* court, like the court in *Burnette–Carter,* seemed to assume that an unperfected security interest would be invalid. *See id.* Southwestern also cites three unreported Minnesota Federal District Court opinions [6] in support of its position. These brief memorandum opinions hold that the respective auctioneers were "purchasers" under UCC § 9–103(1)(d) and not liable in conversion to unperfected secured parties. These decisions are bereft of any analysis of the issue and do not persuade us to alter our interpretation of Kansas law.

■ Finally, Southwestern makes an alternative argument that it cannot be held liable for conversion unless it is a "purchaser." This claim is based on Kan.Stat. Ann. § 84–9–201, which provides that "[e]xcept as otherwise provided by this act a security agreement is effective according to its terms between the parties, against

---

**5.** In general, under Kan.Stat.Ann. § 84–9–301(1), an unperfected security interest is subordinated to the rights of perfected secured parties, certain lien creditors, buyers not in the ordinary course of business, and buyers of farm products in the ordinary course of business. Notably absent from the list are auctioneers. Thus, the liability of auctioneers must be

determined by general common law principles. Kan.Stat.Ann. § 84–1–103.

**6.** *United States v. Kost Security, Inc.,* No. 3–79–12 (D.Minn. May 4, 1981); *Swift County Bank v. Siouxland Farmers Livestock Sales, Inc.,* No. 3–76–305 (D.Minn. Feb. 13, 1980); *United States v. Kost Security, Inc.,* No. 3–76–474 (D.Minn. June 28, 1978).

purchasers of the collateral and against creditors." According to Southwestern, if it is not a "purchaser," the Bank's security agreement cannot be enforced against it. *See* Dugan, *supra*, at 357 ("If the auctioneer is held not to fall within the ambit of Section 9–201, then any conversion action based on his interference with a security interest is completely precluded."). Southwestern cites no cases and we were unable to discover any judicial decisions relieving an auctioneer of conversion liability through application of this provision.

Southwestern's interpretation of § 84–9–201 would amount to a sub silentio repeal of an entire body of law. The introductory provisions of the Code, however, provide that general principles of law continue to govern commercial transactions unless explicitly displaced by the UCC. Kan.Stat.Ann. § 84–1–103 comment 1, Kansas comment. We do not believe § 84–9–201 was designed to absolve auctioneers of conversion liability except in those narrow instances in which they also might qualify as "purchasers." Furthermore, under Kansas law an auctioneer's conversion liability arises because it "stands in the shoes of [its] principal," a *party* to the security agreement. *DeVore*, 207 Kan. at 503, 485 P.2d at 1017.

AFFIRMED.