No. 60,838

SCHOLFIELD BROTHERS, INC., *Appellee*, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, *Appellant*.

(752 P.2d 661)

Opinion filed March 25, 1988.

*Stephen M. Kerwick*, of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued the cause and was on the brief for appellant.

*Ronald D. DeMoss*, of Williamson, McGee, Griggs & DeMoss, Chartered, of Wichita, argued the cause, and *Broc E. Whitehead*, of the same firm, was on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, J.: This action raises some first impression questions concerning the liability of a third-party tortfeasor's insurance carrier to the party holding a security interest in the vehicle damaged after the insurance carrier has settled with the owner-operator of the vehicle. The district court held in favor of the secured party and the insurance carrier appeals from this judgment.

The facts may be summarized as follows. On July 30, 1986, an automobile owned and driven by Marie Parrish collided with an automobile owned and driven by Florence L. Clafer. The accident was the result of Parrish's negligence. There was no insurance in effect on the Clafer vehicle. The Clafer vehicle was extensively damaged and State Farm Mutual Automobile Insurance Company, Parrish's insurer, settled with Clafer on the basis that the vehicle had been "totalled." On August 18, 1986, State Farm paid Clafer $3,681.00 and received assignment of the vehicle and title of the vehicle. The title showed General Motors Acceptance Corporation (GMAC) had a security interest in the

vehicle. State Farm's brief contains the following statements: "GMAC, as lienor, would not execute the assignment. As a result, State Farm returned the title to GMAC." Plaintiff does not controvert these statements and there is nothing in the record indicating otherwise. Therefore, we accept such statements as being a correct recitation of the facts.

After the settlement, Clafer stopped making her monthly contractual payments to GMAC and said corporation assigned the contract back to the dealer (Scholfield Brothers, Inc.) under their recourse provisions. Scholfield then became the owner of the security interest in the vehicle. On January 8, 1987, Clafer filed for relief in bankruptcy and her debt to Scholfield was listed therein ($3,642.52).

Scholfield brought this action on December 24, 1986, against State Farm seeking payment of the balance owed by Clafer on the theory of conversion and against Clafer requesting that an equitable lien be placed on the proceeds she received from State Farm. Clafer did not appear in the action and, apparently, Scholfield abandoned its claim herein as to her. At least, the claim against Clafer was not a part of the summary judgment entered herein.

The district court granted summary judgment against State Farm in the amount of $3,681.00 on the basis that State Farm's acts herein constituted conversion of Scholfield's security interest in the Clafer vehicle. State Farm appeals from this determination.

For its first issue, State Farm contends the district court erred in holding the acts of State Farm herein constituted a conversion.

Specifically, the district court held:

"Kansas case law clearly allows the assignment of tort claims. *Newell v. Krause,* 239 Kan. 550 [, 722 P.2d 528 (1986)]. When GMAC assigned back the full recourse note of defendant Clafer, any tort claim was assigned back with it. Therefore, the plaintiff now holds any causes of action against the defendant State Farm for conversion.

"It is clear that State Farm knew GMAC held a security interest in the vehicle, as [its] name appeared upon the title as the secured party.

"The defendant State Farm paid the full value of the vehicle to defendant Clafer and had the title signed over to [it].

"The defendant Clafer received a 'windfall' for something she was not entitled to, as she could not sell what was not hers to sell.

"The reason for the secured party being named on the title, is a notice to the world they have a valid lien thereon.

"A conversion occurs when there is an intentional exercise of dominion and control over a *property interest* that interferes with the right of another to control the *property interest* and results in damages to the owner of the *property interest. Nelson v. Hy-Grade [Construction & Materials, Inc.,* 215 Kan. 631, 527 P.2d 1059 (1974),] Restatement [(Second) of Torts § 222A (1964)].

"The defendant State Farm, by paying the full value of the vehicle to another with knowledge that GMAC had a secured interest (property interest) therein, clearly met the threshold of all the elements of conversion and totally defeated GMAC's right to control their property interest and thus the [secured] property interest in the vehicle was effectively destroyed. [*First Nat'l Bank & Tr. Co. v. Atchison County Auction Co.,* 10 Kan. App. 2d 382, 699 P.2d 1032, *rev. denied* 237 Kan. 886 (1985).]" (Emphasis in original.)

The district court's reliance on *First Nat'l Bank & Tr. Co. v. Atchison County Auction Co.,* 10 Kan. App. 2d 382, 699 P.2d 1032, *rev. denied* 237 Kan. 886 (1985), was misplaced as that case involved a farmer's sale of secured cattle through a livestock sale barn. In affirming the district court's judgment in favor of the secured party, the Court of Appeals stated:

"The general rule of commercial law is that a buyer in the ordinary course of business takes free of a security interest created by his seller. K.S.A. 84-9-307(1). However an exception to the general rule occurs when the buyer is 'a person buying farm products from a person engaged in farming operations.' K.S.A. 84-9-307(1). Livestock is included within the definition of farm products, and the parties do not dispute that Hilst was a person engaged in farming operations. K.S.A. 84-9-109(3). This exception permits a secured creditor to reach collateral in the hands of a good faith purchaser unless consent to the sale was given pursuant to K.S.A. 84-9-306(2) . . . ." 10 Kan. App. 2d at 386-87.

No one is contending that Clafer's assignment of the title was either a "sale in the ordinary course of business" or a sale of farm products. In finding liability, the Court of Appeals applied the common law relative to conversion by a factor or commission merchant—a situation wholly unlike that before us.

We do not believe conversion is an appropriate theory on which to grant relief herein. A conversion is the unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another. *Nelson v. Hy-Grade Construction & Materials, Inc.,* 215 Kan. 631, Syl. ¶ 2, 527 P.2d 1059 (1974). See Restatement (Second) of Torts § 222A (1964). Clafer was the owner of her vehicle. That vehicle was damaged through the negligence of Parrish. Clafer made a claim against

Parrish's automobile insurance carrier, State Farm. The contract between State Farm and Parrish provided, in part:

"SECTION I - LIABILITY COVERAGE A
"We will:
   1. Pay *damages which an insured becomes legally liable to pay because of*:
      a. bodily injury to others, and
      b. damage to or destruction of property including loss of its use,
      caused by accident *resulting from the ownership maintenance or use of your car."*

It also provided:

"*Suit Against* Us
"There is no right of action against us:

   . . . .
      b. under the liability coverage, *until* the amount of damages *an insured is legally liable* to pay has been finally determined by:
      (1) judgment after actual trial, and appeal if any; or
      (2) agreement between the insured, the claimant and us."

After State Farm's investigation of the facts of the collision, it determined its insured, Parrish, was liable for the damages to Clafer's automobile and entered into settlement negotiations with Clafer. Settlement was made on the basis the vehicle had been totalled and, upon payment, State Farm asked for and received an assignment from Clafer of her interest in the wrecked vehicle. The title received by State Farm showed the security interest of GMAC. Obviously, Clafer's assignment of her interest did not and could not operate as an assignment of GMAC's security interest therein. That is why State Farm contacted GMAC—to clear the title of the security interest in order to permit disposal of the vehicle. GMAC refused the request and the title was sent to GMAC.

No case has been cited nor has our research disclosed any case where facts comparable to these have been held to be a conversion or where conversion was even discussed as a possible theory of relief. A minority of jurisdictions have allowed recovery under somewhat comparable facts, but only on a theory other than conversion. Illustrative of such holdings is *Nationwide Ins. Co. v. Bank of Forest, Etc.*, 368 So. 2d 1273 (Miss. 1979).

In *Nationwide*, the debtor's vehicle was demolished in an accident due to the negligence of the other party. Debtor's certificate of title listed the secured party as the first lienholder

on the property. The negligent driver's insurer settled the debtor's claim. The demolished vehicle was turned over to the insurance company and sold for its scrap value. The insurance company did not obtain a certificate of title from the debtor prior to its sale for salvage. 368 So. 2d at 1274. In rejecting the majority rule stated herein, the Mississippi Supreme Court reasoned:

"The appellants argue, with some logic, that the rules of other jurisdictions should be persuasive to us. The sum of these rules is set forth in 69 Am. Jur. 2d, *Secured Transactions*, section 267 (1972), as follows:

" 'Generally, under pre-Code law a settlement by a wrongdoer with either the chattel mortgagee or the mortgagor, in the absence of fraud or collusion, was a bar to an action by the other, the amount paid being held in trust to be applied according to the respective rights of the mortgagor and the mortgagee. Furthermore, a settlement by a wrongdoer with the mortgagor has been held to be a bar to an action by the mortgagee where actual notice of the mortgagee's interest had been given to the wrongdoer, even where the notice was ignored and left unanswered or where the mortgagee had some other reason to believe that despite the notification, settlement might be made without regard to his rights . . . .'

We acknowledge the rule but do not think it persuasive. The numerous business and credit transactions directly related to motor vehicles are common knowledge. The protection of business through registration of title under the Motor Vehicle Title enactment, in our opinion, outweighs the barring of either a mortgagor or mortgagee from bringing suit against a tort-feasor who has settled with either the one or the other with total disregard for the lien rights of others. We think the very purpose of the Motor Vehicle Title Law was to afford a central place and a designated official so that essential information concerning title to motor vehicles might be readily available to anyone with legitimate needs therefor. It seems to us that ordinary prudence, at the very minimum, would require a cursory investigation of title before an owner was paid the full value of the vehicle, less salvage value, in settlement of a claim. Had this been done both the Bank of Forest and Nationwide would have been protected." 368 So. 2d at 1275-76.

The majority rule was expressed in *International Harvester v. Valdez*, 42 Wash. App. 189, 709 P.2d 1233 (1985), where the debtor, Valle, bought a tractor, with the bulk of the purchase price financed by the seller, who assigned the contract to International. International perfected its interest by having it recorded on the certificate of title. Subsequently, the tractor was involved in an accident with a truck owned by Valdez. Valdez's insurance carrier settled debtor's property damage claim—a total loss—for $14,000.00. Neither Valdez nor his insurance carrier requested an examination of the certificate of title.

When debtor fell behind in subsequent payments, International learned of the accident and brought suit against Valdez for the damages to its security interest. The trial court granted Valdez summary judgment, stating (1) Valdez had no duty to protect International's security interest, and (2) International's suit was barred by Valdez's settlement in full with debtor. 42 Wash. App. at 191.

On appeal, the Washington Court of Appeals affirmed. It stated the purpose of perfecting a security interest is to protect the secured party against creditors, transferees, and creditors' representatives in insolvency and that *tortfeasors* were not among those given record notice of properly perfected security interests. Further, the court stated, statutory and case law contemplated one settlement in which the settling party holds the proceeds in trust for the secured party to the extent of the outstanding obligation. "The underlying rationale is that the debtor has the right to possession and is entitled to recover the full amount of damage. Thus, a tortfeasor would not necessarily have a duty to join the secured party even if he had actual notice of the security interest." 42 Wash. App. at 194.

The *Valdez* court concluded:

"In applying the above concepts to the facts presented here, we conclude the tortfeasor, Valdez, did not owe any duty to the secured party, International. First, International's perfection of its security interest in the tractor did not provide Valdez or his insurer with notice of that interest. Neither Valdez nor his insurer was required to ascertain whether there were any liens upon Valle's tractor prior to the settlement of the claim. Official Comment 1, RCW 62A.9-303; *Johnson v. Wright,* [280 S.C. 535, 537, 313 S.E.2d 343 (1984)]. Moreover, International's contract does not obligate Valle to give the secured party notice of any damage to the collateral. International is seeking to impose a higher duty upon Valdez than it imposed upon its own debtor, Valle.

"Second, Valle and not International was in possession of the tractor at the time the accident occurred. Valle was not in default and, in fact, made one payment after the accident. Valdez's wrongful act created only one cause of action for property damage, and Valle as vendee was entitled to recover for the full value of the damage. [Citations omitted.]" 42 Wash. App. at 195.

Two Kansas cases, not involving an assignment of title, should be mentioned.

In *Bankers Investment Co. v. Jensen Construction Co.,* 183 Kan. 1, 325 P.2d 66 (1958), plaintiff was the secured party to a truck purchased by the debtor, Wilson. The truck, driven by

Wilson, was subsequently damaged in an accident with defendant's vehicle. Plaintiff sued defendant to recover damages. The trial court sustained defendant's demurrers. Plaintiff appealed on the question whether a mortgagee under a chattel mortgage can maintain an action and recover damages from one who has by his negligence damaged the mortgaged property resulting in loss or impairment of the mortgagee's security. 183 Kan. at 2-3. Plaintiff argued it had an immediate right to possession of the secured property at the time of the accident, and thus had the right to sue third parties for negligent damage to the secured property. We rejected this argument, in affirming the lower court, stating as follows:

"To follow plaintiff's theory that it was actually in possession of the truck, or had the right to possession, would involve pure speculation by first inferring that Wilson owed a payment at the time of the collision, in the face of the allegation that a payment was made after the collision, the source of which payment is nowhere disclosed or explained in the petition, and then arriving at a second inference that Wilson was therefore in default so that plaintiff was entitled to possession. Such pyramiding of inferences cannot be done. (*Emigh v. Andrews*, 164 Kan. 732, 191 P.2d 901.) Plaintiff cannot deny that the mortgage placed possession and all rights thereto in Wilson, who was alleged to have been driving and in possession of the truck at the time of the collision. . . .

. . . .

". . . If possession, or right to possession, is in the mortgagee, as required by our decisions, at the time of a wrongful personal tortious injury or destruction of a chattel securing a mortgage, then without question the mortgagee, under the general rule and also under the rule in Kansas, could recover against a third party wrongdoer or tort-feasor." 183 Kan. at 4-5.

In *Elmore v. Royal Ins. Co.*, 154 Kan. 93, 114 P.2d 786 (1941), plaintiff sold an automobile to one Flowers, and held a mortgage lien on the automobile. The automobile was insured by defendant. Subsequently, the automobile was destroyed in a collision with a third party, Dora Robertson, whose own automobile insurance indemnified her against loss or damage caused by her to the property of others. Flowers claimed a cause of action against Robertson. Four days later, Flowers was paid $100 by Robertson and her insurance carrier, and Flowers executed and delivered to Robertson and her insurance carrier a full and complete release from all further liability stemming from the accident. Neither plaintiff nor defendant knew of the payment and settlement until one month later. Plaintiff sued defendant

insurance company to recover damages. After defendant prevailed in district court, plaintiff appealed. We affirmed, holding the mortgagee had no rights independent of the mortgagor who forfeited his rights in a settlement thereby foreclosing the mortgagee's claim. 154 Kan. at 97-100.

Had State Farm paid the $3,681.00 without accepting the assignment of title, clearly the secured party would have had no cause of action against State Farm. State Farm accepted an assignment of Clafer's interest in the vehicle as a part of the settlement. When GMAC refused to give up its security interest in the wrecked vehicle, State Farm mailed the title to GMAC, an act of abandonment of any ownership claim therein. What happened to the physical remains of the wrecked vehicle thereafter is not before us. We must conclude the parties do not consider this to be significant to any issue on appeal.

We conclude the district court erred in entering summary judgment against State Farm on the basis of conversion.

For its second issue, State Farm contends that if it were to be found guilty of conversion then the damage award should be limited to the value of the vehicle in its wrecked condition. By virtue of our determination in the preceding issue that no conversion occurred, this issue is moot.

Although Scholfield did not cross-appeal herein, it argues that should we hold that no conversion occurred, then we should find liability against State Farm on the basis of K.S.A. 84-9-306(1), which provides:

"'Proceeds' includes whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds. Insurance payable by reason of loss or damage to the collateral is proceeds, except to the extent that it is payable to a person other than a party to the security agreement. Money, checks, deposit accounts, and the like are 'cash proceeds.' All other proceeds are 'non-cash proceeds.'"

As will be recalled, this was the basis of Scholfield's claim against Clafer, not State Farm. By some undisclosed process of metamorphosis, at the time of the summary judgment the district court considered this as an alternate theory of liability against State Farm. The district court held the statute inapplicable as to State Farm. Even if this issue is, arguably, properly before us, it is without merit. The statute would authorize Scholfield to track

the insurance proceeds paid to Clafer by State Farm and recover from Clafer on her debt to Scholfield. It is not a vehicle which would require the payer of such proceeds to pay a second time such as is being claimed herein.

Before concluding, it should be noted that under her agreement with the secured party, Clafer was required to keep collision insurance in force on the vehicle for the protection of the secured party. She allowed such insurance to lapse. The secured party could have taken steps to assure such coverage remained in effect, but failed to do so. Had such insurance been in force at the time of the collision, the secured party would have been protected.

The judgment is reversed.