NOT DESIGNATED FOR PUBLICATION

No. 125,458

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

I-135 AUTO AUCTION, LLC,
*Appellee/Cross-appellant*,

v.

LINDA C. MCMASTER, *Defendant/Cross-appellee*,
and
KEVIN M. MCMASTER,
*Appellant/Cross-appellee*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; ERIC A. COMMER, judge. Oral argument held May 21, 2024. Opinion filed July 5, 2024. Affirmed in part, reversed in part, and vacated in part.

*Craig Schultz*, of Shultz Law Office, P.A., of Wichita, and *Kevin M. McMaster*, appellant pro se.

*Jeffery L. Carmichael*, of Morris Laing Law Firm, of Wichita, for appellee.

Before BRUNS, P.J., HILL, J., and MARY E. CHRISTOPHER, S.J.

PER CURIAM: This is an appeal of a judgment a jury awarded for malicious prosecution to I-135 Auto Auction to recover the costs and damages for defending itself from prior litigation brought by Kevin and Linda McMaster. The McMasters had sued Auto Auction for conversion based on their temporary loss of a $40 garage door opener that was inside an automobile that had been repossessed and then stored on the Auto Auction lot. The automobile was owned not by the McMasters but by someone else. In the malicious prosecution action, the jury found Kevin McMaster lacked probable cause

1

to file and then continue to pursue the conversion lawsuit and found that he acted with malice. The jury awarded $57,692.74 in damages to Auto Auction.

In its cross-appeal, Auto Auction appeals the trial court's grant of judgment as a matter of law in favor of Linda McMaster, based on the absolute defense of advice of counsel.

*A car repossession leads to a conversion lawsuit.*

In January 2015, a vehicle owned by Elaine Parker was repossessed by Speedy Cash for nonpayment on its note. Parker was a family friend of Kevin and Linda McMaster, who are both attorneys. Because Parker would occasionally care for the McMasters' pets, she would sometimes have the McMasters' spare garage door opener in her car. The garage door opener has an approximate value of $40.

Parker called Linda McMaster when the car was being repossessed to notify her of the incident because their garage door opener was in her car. Linda spoke with the repossession agent on the phone. Parker then gave Linda the name of the place the car was taken to and a phone number for Speedy Cash.

The day after the car was repossessed, Kevin McMaster learned from Linda that Parker's car was stored in a secure lot at I-135 Auto Auction in Wichita. Kevin McMaster went to the location. He was described as "belligerent" and demanded to retrieve his personal property from a car. He identified himself as an attorney and insisted, "It is my property, and if you don't give it back to me, it is conversion."

Kevin McMaster waved around a printout of caselaw that defined the law of conversion. He did not identify what the property was that he was seeking. He identified the repossessed vehicle only by its color; he did not know the make or model. He did not identify the owner of the vehicle. He pointed to a phone number on a scrap of paper. He

2

told them to call the number. A representative of Auto Auction, Ryne Rivas, said she could help him but that she needed more information about the vehicle, the owner, or the lienholder. Kevin McMaster did not provide any more information. Instead, he threatened to sue Auto Auction for conversion. Rivas, feeling threatened, then asked him to leave.

Later that day, Kevin McMaster sued Auto Auction and Rivas for conversion because he "was so offended about the way [he] was treated." He named his wife, Linda, as the plaintiff, though he did not have her permission to do so. He sought damages rather than the return of the garage door opener.

To prevent the release of property to unauthorized persons, it was Speedy Cash's policy to release any personal property found in a repossessed vehicle to the vehicle's owner only after verifying the owner's identity and that they had authority from the owner to recover the personal items in the car.

The next day, Parker and her son went to Auto Auction, identified her vehicle, and presented her identification. Auto Auction contacted Speedy Cash. Speedy Cash sent over a release form. Parker was permitted to retrieve her personal property from her vehicle. Parker returned the garage door opener to the McMasters after that.

Despite having their garage door opener returned within two days, the McMasters continued to litigate the conversion action for almost three years. Sometime during the litigation, Auto Auction filed a third-party petition against Parker. The trial court dismissed that claim. Auto Auction moved for summary judgment, which was denied because issues of material fact were disputed.

Kevin McMaster acted as Linda's attorney until the bench trial. Linda was then represented by a different attorney at trial. At trial, Linda's attorney called only one witness—Kevin McMaster —and then rested. The trial court directed judgment for Auto

3

Auction. The court found Linda failed to present any direct evidence that the defendants ever had possession of her garage door opener and that, when the demand was made, she did not present the defendants with sufficient information showing her ownership of or right to possession of any property in the defendant's possession. Therefore, the defendant's refusal to act was proper. The McMasters did not appeal that judgment.

*Auto Auction sued.*

On July 31, 2018, Auto Auction filed suit against Kevin and Linda McMaster for malicious prosecution because of their prior suit. Kevin McMaster moved to dismiss, making three claims: Auto Auction was not authorized to do business in Kansas and therefore could not maintain this action under K.S.A. 17-7307(a); the petition failed to state a claim upon which relief could be granted; and there was no legal basis for Auto Auction's claim for attorney fees in this case. The trial court denied the motion. The court ruled that since Auto Auction was reinstated to do business as of August 13, 2018, it would serve no purpose to make them refile this action. The court pointed out that Auto Auction had sufficiently pled a claim in the petition and that the attorney fees necessary to prosecute a malicious prosecution claim could be awarded as damages.

Kevin McMaster then counterclaimed against Auto Auction for malicious prosecution of Parker in the prior suit and sought relief from that judgment based on fraud and misrepresentation. The trial court dismissed those claims. The court ruled Kevin McMaster lacked standing to claim malicious prosecution—that claim belonged to Parker and could not be assigned to Kevin McMaster. And the court ruled that Kevin McMaster lacked standing to bring a claim for relief from judgment because no judgment was taken against him in the prior case. The claims of fraud and misrepresentation were barred by collateral estoppel. The court also held that the prior trial ended in favor of Auto Auction because the McMasters did not present sufficient evidence to prove their case.

4

A year later, in June 2019, the McMasters filed motions for summary judgment. The McMasters asked the court to find there was probable cause for filing the prior suit because they believed the garage door opener was in the repossessed vehicle held by Auto Auction. The McMasters argued there was no evidence of malice. Linda McMaster also argued that she relied on advice of counsel and her husband, Kevin McMaster. The trial court denied the motions. The court found the extent of Linda's involvement in, knowledge of, or in the decision making in the prior lawsuit was an unknown material fact and that none of Kevin McMaster's additional assertions of fact were uncontroverted.

Prior and during trial, the McMasters objected to an expert testifying about whether they had probable cause to file the prior action or acted with malice. They argued it invaded the province of the jury to be the fact-finder. The trial court overruled the objection.

*Auto Auction's claims go to trial.*

The case proceeded to jury trial. Both parties called experts to testify about whether the underlying suit was brought without probable cause and with malice. Auto Auction also called its attorney from the underlying suit; Ryne Rivas; Rachel Russell; and Kevin and Linda McMaster. Russell was CFO of Auto Auction and was present when Kevin McMaster showed up at Auto Auction and demanded his property. Russell corroborated Rivas' testimony about Kevin McMaster's actions and demeanor.

After the plaintiff's witnesses testified, the trial court granted judgment as a matter of law in favor of Linda McMaster only, dismissing her from the case. The court found there was evidence of a lack of probable cause to file or continue the litigation for both defendants. But on the malice issue, there was no evidence showing Linda was malicious. She was acting on the advice of counsel. There was evidence of malice by Kevin

5

McMaster. The court denied Kevin McMaster 's motion for judgment as a matter of law. Parker and Kevin McMaster testified for the defense.

The jury found Kevin McMaster lacked probable cause to initiate and to continue the lawsuit against Auto Auction and that Kevin McMaster acted with malice when he filed or continued the lawsuit. The jury awarded $57,692.74 in damages. The jury declined to award punitive damages. The trial court entered judgment on January 3, 2022.

Auto Auction moved for assessment of costs under K.S.A. 60-2003. Auto Auction sought reimbursement for the mileage costs of two witnesses and for the cost to depose the McMasters. The trial court granted the motion in the amount of $2,192.63.

Auto Auction moved for an order of sanctions against Kevin McMaster under K.S.A. 60-102 and K.S.A. 60-211. Auto Auction sought attorney's fees for having to respond to Kevin McMaster's motion to dismiss, counterclaims, and unnecessary witnesses he listed on the pretrial conference order. The trial court granted the motion and awarded a sanction in the amount of $8,684.50.

On January 31, 2022, Kevin McMaster filed a renewed motion for judgment as a matter of law. He argued that because the trial court in the prior suit denied Auto Auction's motion for summary judgment, there was probable cause supporting that suit; whether or not Kevin McMaster was rude when he went to retrieve the garage door opener, Auto Auction converted the opener when they took the car; that Auto Auction did not fully prevail in the prior suit because the McMasters got their property back; and that it was sufficient that Kevin McMaster reasonably believed the garage door opener was in the car. The trial court denied the motion. The court found the circumstances allowed the jury to make the findings it did.

6

*Issues raised in this appeal*

Kevin McMaster argues the trial court erred by denying his motion for summary judgment because Auto Auction offered no admissible evidence from which a reasonable fact-finder could find he filed or continued the underlying suit without probable cause or that he acted with malice.

Kevin McMaster also argues the court erred in denying his motion for judgment as a matter of law. In his view, there was no evidence to dispute his reasonable belief that the garage door opener was in Auto Auction's possession when the suit was filed; that Auto Auction refused to return the property; and that it was his filing of the suit that caused Auto Auction to permit Parker to retrieve her personal property from the vehicle.

For his third error, Kevin McMaster claims the trial court had no authority to award costs because they were not authorized by statute and were unreasonable. This includes witness fees, mileage, and deposition expenses.

Kevin McMaster argues the trial court erred when it granted Auto Auction's motion for sanctions under K.S.A. 60-211(c).

He also contends the trial court should have granted his motion to dismiss and erred when it denied his counterclaims.

*Cross-Appeal issue*

Auto Auction cross-appeals the trial court's decision to grant judgment as a matter of law in favor of Linda. It argues the question of malice should have been left for the jury.

7

We begin with the first issue that delves into the law of judgments.

*It is inappropriate for us to review a denial of a motion for summary judgment after a full trial on the merits.*

Kevin McMaster asks us to review and overturn the district court's denial of his motion for summary judgment even though there was a full trial on the merits. We will not do so. This claim is like asking the judges at a boxing match to set aside a win by knockout in the tenth round because the judges did not score the first round properly.

The law on this point is well-settled. A party may not appeal an order denying summary judgment after a full trial on the merits because that order "'retains its interlocutory character as simply a step along the route to final judgment. . . . Once the case proceeds to trial, the full record developed in court supersedes the record existing at the time of the summary judgment motion.'" *Budd v. Walker*, 60 Kan. App. 2d 189, 197, 491 P.3d 1273 (2021). The party who lost on summary judgment can preserve any legal issues on appeal by including them in a motion for judgment as a matter of law. 60 Kan. App. 2d 197. Judgments awarded after a full trial are always more trustworthy than judgments rendered early in the proceedings.

This court cannot review the trial court's summary judgment ruling. We turn now to the remaining issues after establishing a legal context.

*A review of the law of conversion and malicious prosecution provides a legal context for our rulings.*

*Conversion*

"'Conversion is the unauthorized assumption or exercise of the right of ownership over goods or personal chattels belonging to another to the exclusion of the other's

8

rights.'" *Armstrong v. Bromley Quarry & Asphalt, Inc.*, 305 Kan. 16, 22, 378 P.3d 1090 (2016); *Scholfield Bros., Inc. v. State Farm Mut. Auto. Ins. Co.,* 242 Kan. 848, 850, 752 P.2d 661 (1988) (citing Restatement [Second] of Torts § 222A [1965]). In general, the intent required for conversion is satisfied merely by the use or disposition of goods belonging to another. Knowledge by the actor concerning their ownership is not required. *Nelson v. Hy-Grade Construction & Materials, Inc.*, 215 Kan. 631, 634, 527 P.2d 1059 (1974). A conversion may be based on the detention of or unreasonable withholding of possession from one who has the right to possess the property. One in possession of personal property—as a bailee or otherwise—who, on demand, refuses without proper qualification to surrender it to another entitled to its immediate possession is subject to liability for conversion. *Queen v. Lynch Jewelers, LLC*, 30 Kan. App. 2d 1026, 1036, 55 P.3d 914 (2002) (citing Restatement [Second] of Torts § 237 [1965]).

A bailee who receives the possession of personal property for storage or safekeeping on behalf of a bailor is subject to liability for conversion only if the bailee does so with knowledge or reason to know that a third person has the right to immediate possession of the property. Restatement (Second) of Torts § 230 (1965).

One in possession of personal property does not become a converter by making a qualified refusal to immediately surrender the property when the circumstances are such that the demand for immediate surrender is unreasonable. Restatement (Second) of Torts § 238 (1965). For example, a bailee does not become a converter by making a qualified refusal to surrender it to a claimant whose identity is in reasonable doubt, for the purpose of a reasonable opportunity to identify him. Restatement (Second) of Torts § 239 (1965). And, generally, one in possession of personal property who is in reasonable doubt as to the right of a claimant to its immediate possession does not become a converter by making a qualified refusal to surrender the property to the claimant for the purpose of affording a reasonable opportunity to inquire into such right. Restatement (Second) of Torts § 240 (1965).

9

*Malicious prosecution*

In a civil action for malicious prosecution, the following elements must be shown:

- the defendant initiated, continued, or procured civil procedures against the plaintiff;
- the defendant acted without probable cause;
- the defendant acted with malice;
- the proceeding terminated in favor of the plaintiff; and
- the plaintiff sustained damages. *Bartal v. Brower*, 268 Kan. 195, 200, 993 P.2d 629 (1999).

The attorney who represented the plaintiff in the prior action may be liable for malicious prosecution. Special rules apply to such claims. An attorney must conduct a reasonable investigation before filing a civil action on behalf of a client. The jury may consider whether the attorney, before filing the action, made a demand on the other party and allowed that party to respond with its version of the facts. *Nelson v. Miller*, 227 Kan. 271, 276, 282-85, 607 P.2d 438 (1980).

Our review of the record here reveals that the jury was properly instructed on the law of conversion and malicious prosecution.

*We find no error in the court denying Kevin McMaster's motion for judgment as a matter of law.*

The parties are poles apart on this issue. Kevin McMaster contends there was no evidence to dispute his reasonable belief that the garage door opener was in Auto Auction's possession when the suit was filed, that Auto Auction refused to return the property, and that it was his filing of the suit that caused Auto Auction to permit Parker to

retrieve her personal property from the vehicle. He contends Auto Auction failed to show it prevailed on all matters in the prior action because Auto Auction released the garage door opener after he filed the suit. He argues Auto Auction failed to show he acted without probable cause.

Auto Auction argues there was evidence Kevin McMaster acted without probable cause and with malice. His demand for personal property out of a vehicle he did not own without proper documentation was unreasonable, he conducted no investigation before suing, he did not seek return of the garage door opener in the suit, he continued the suit for almost three years after the garage door opener was returned, and he testified he filed suit because he did not like the way he was treated. Auto Auction had a qualified right to refuse to immediately surrender personal property to Kevin McMaster because Kevin McMaster's demand was unreasonable. The underlying suit terminated in Auto Auction's favor when judgment was entered in that case during the bench trial.

We review this as a matter of law. Therefore, we examine the record to see whether evidence existed from which a reasonable jury could properly find a verdict for the nonmoving party. See *Siruta v. Siruta*, 301 Kan. 757, 766, 348 P.3d 549 (2015).

For its part, when ruling on a motion for judgment as a matter of law, a district court must resolve all facts and inferences that may reasonably stem from the evidence in favor of the party against whom the ruling is sought. The district court must deny the motion if reasonable minds could reach different conclusions based on the evidence. As an appellate court, we must apply a similar analysis when reviewing the grant or denial of a motion for judgment as a matter of law. See *Dawson v. BNSF Railway Co.*, 309 Kan. 446, 454, 437 P.3d 929 (2019)

We begin our analysis with a review of the case history.

11

*The McMasters' conversion lawsuit ended in favor of Auto Auction.*

The underlying proceeding was the suit for conversion against Auto Auction that sought damages of up to $500. The proceeding terminated in favor of Auto Auction when the district court directed judgment for Auto Auction on the conversion claim. Kevin McMaster's argument that the garage door opener was returned because of the suit is speculative and not supported by the record. Kevin McMaster continued to litigate the conversion action for almost three years after the garage door opener was returned.

*Kevin McMaster acted without probable cause.*

It appears reasonable to us that Auto Auction had the right to make a qualified refusal to immediately surrender the property if, under the circumstances, Kevin McMaster's demand was unreasonable. Auto Auction did not become a converter of the McMasters' property by making a qualified refusal to immediately surrender personal property out of a vehicle in order to verify Kevin McMaster's identity and his right to the property. See *Queen*, 30 Kan. App. 2d at 1036; Restatement (Second) of Torts §§ 238-240.

Probable cause for filing a proceeding "exists when there is a reasonable ground for suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious or prudent person in the belief that the party committed the act of which that person is complaining." *Bergstrom v. Noah*, 266 Kan. 829, Syl. ¶ 2, 974 P.2d 520 (1999). This inquiry is limited to the facts and circumstances as they appeared to the initiator at the time the litigation was commenced. The question is not whether the initiator is correct in believing that the court would sustain the claim but whether that person's opinion that there was a sound chance that the claim might be sustained *was a reasonable one*. *Bergstrom*, 266 Kan. at 837. Even if the suit is properly initiated, a person can be liable for malicious prosecution for wrongfully continuing the suit if it becomes apparent that

12

probable cause is lacking. *Miskew v. Hess*, 21 Kan. App. 2d 927, 933, 910 P.2d 223 (1996). When the facts tending to establish the existence or lack of probable cause are in dispute, the jury decides. *Bergstrom*, 266 Kan. at 837.

We must view the facts and inferences that may reasonably be drawn from the evidence in favor of Auto Auction. See *Dawson*, 309 Kan. at 454. That means where the testimony of Rivas and Russell differed from Kevin McMaster's testimony about the circumstances of his January 7 visit to Auto Auction, Rivas' and Russell's testimony carries the day. A review of their evidence is helpful at this point.

According to Rivas and Russell, Kevin McMaster came into Auto Auction "belligerent" and demanded to retrieve his personal property from a vehicle. He identified himself as an attorney. He waved around a printout of some law he wanted them to read. He did not identify what property he was seeking. He identified the vehicle only by its color; he did not know the make or model. He did not identify the owner of the vehicle. He pointed to a phone number on a scrap of paper and told them to call the number.

Rivas said several times that she could help him, but she needed more information about the vehicle, the owner, or the lienholder. Kevin McMaster did not provide any more information. Rather, he threatened to sue Auto Auction for conversion. Rivas, feeling threatened, then asked him to leave. Kevin McMaster filed suit just a few hours after making the demand.

Under these circumstances, we find that there was ample evidence for the jury to find Kevin McMaster's demand on January 7 for immediate surrender of property was unreasonable and, in turn, that Kevin McMaster's belief that there was a sound chance that the claim for conversion might be sustained was unreasonable. He did not even identify what property he was seeking or whose vehicle it was in. He made demands and threats rather than providing Rivas with the information she needed so that she could

13

retrieve his property. Auto Auction did not convert the McMasters' garage door opener by asking for information to verify Kevin McMaster's right to the property he was seeking.

Kevin McMaster offers us some weak evidentiary arguments. He argues the expert testimony cannot be used to support the trial court's denial of his motion because the trial court should not have allowed Auto Auction's expert to give an opinion about whether the underlying suit was filed and continued without probable cause and with malice, because there were no technical facts that necessitated an expert to help the jury understand. He also argues testimony he sought to admit that would show probable cause was improperly excluded as a collateral attack on the prior judgment. The testimony would have shown that the McMasters' garage door opener was in Parker's vehicle at the time it was repossessed and Auto Auction refused to return it. He makes these arguments only to show the trial judge erred in denying his motion for judgment as a matter of law.

Because there was ample evidence to show a lack of probable cause without the expert testimony, we need not address Kevin McMaster's argument about that testimony. Rivas' and Russel's testimony was sufficient.

Kevin McMaster argues that since Parker testified that their garage door opener was in her car when it was repossessed and Linda testified that she thought it was in the car, his actions when trying to retrieve his property were reasonable. We see no significance in this argument. It is uncontested that Auto Auction did not surrender whatever property Kevin McMaster was demanding when he made the demand on January 7. Additional testimony on these matters would not overcome the evidence that Kevin McMaster's demand on January 7—for the immediate transfer of property he would not identify out of a vehicle he could not identify and did not own—was unreasonable.

14

*Kevin McMaster acted with malice.*

In general, malice is "the intent to do harm without any reasonable justification or excuse." PIK Civ. 4th 103.05; PIK Civ. 4th 127.30. For purposes of a malicious prosecution claim, a defendant acted with malice where the underlying civil action "was initiated primarily for a purpose other than that of securing proper adjudication of the claim on which the action is based." *Bartal*, 268 Kan. at 200-01. Malice is not restricted to personal hatred, spite, or revenge. It is enough that the prior action was initiated for any improper or wrongful motive. The jury may infer malice from the absence of probable cause. *Nelson*, 227 Kan. at 278-79.

There was direct evidence of malice. Kevin McMaster testified he filed the underlying suit because he "was so offended about the way [he] was treated" when he went to Auto Auction to retrieve his property.

There is nothing in this record that persuades us to overturn the findings of this jury.

*We modify the cost assessment.*

After trial, Auto Auction moved for an assessment of costs under K.S.A. 60-2003(4), (5) providing the following information:

"1. The mileage of Jay Piper who attended trial
from Kansas City, Missouri                    199 miles x .56 = $111.44
"2. Terry Moore traveled from Jacksonville,
Florida to attend trial                       1304 miles x .56 = $730.24

15

| | | |
|---|---|---|
| "3. | Deposition of Kevin McMaster used during trial | $944.15 |
| "4. | Deposition of Linda McMaster used during trial | $406.80 |
| | Total Costs | $2,192.63." |

Kevin McMaster opposed the motion, arguing the costs were not authorized by statute and were unreasonable. He argued the witnesses were not compelled to attend trial, Auto Auction did not prove the costs had been paid as required by K.S.A. 28-141, the mileage requested was unreasonable, and the depositions were not admitted into evidence.

The trial court granted the motion. The statute authorizing a taxation of costs—K.S.A. 60-2003—provides for mileage of witnesses attending court. Piper testified he was coming from Kansas City, Missouri. Moore testified he had moved to Jacksonville, Florida. Though not admitted into evidence, the depositions were used as evidence in cross-examination. The court noted that there was no claim the amount of mileage was incorrect and that it recognized the mileage to Kansas City, Missouri as being appropriate.

On appeal, Kevin McMaster argues the trial court erred in awarding mileage costs for the two witnesses because Auto Auction did not claim or prove that mileage was paid to those witnesses in accordance with K.S.A. 28-141. Kevin McMaster further argues the trial court erred in awarding deposition costs because depositions cannot be taxed as costs when they are only used in questioning witnesses and not admitted into evidence, citing *Bridges v. Bentley*, 244 Kan. 434, 769 P.2d 635 (1989).

Auto Auction argues K.S.A 28-141 does not apply because it only deals with fees paid by county employees. The depositions, although not placed into evidence, were used as evidence for impeachment purposes.

16

The award of costs in a civil case is discretionary with the trial court. We review the trial court's taxing of costs for an abuse of discretion. *Wendt v. Univ. of Kansas Med. Ctr.*, 274 Kan. 966, 982-83, 59 P.3d 325 (2002).

The law provides that costs shall be allowed to the party in whose favor judgment was rendered. See K.S.A. 2023 Supp. 60-2002(a). We look at the items separately.

*Mileage*

K.S.A. 60-2003 permits mileage of witnesses to be taxed as costs. It reads, "Items which may be included in the taxation of costs are: . . . (4) Statutory fees and mileage of witnesses attending court or the taking of depositions used as evidence." K.S.A. 2023 Supp. 60-2003.

Under K.S.A. 28-125, the statutory witness fee is $10 per day and mileage "at the rate prescribed by law" "for each mile necessarily and actually traveled in going to and returning from the place of attendance." K.S.A. 28-125; see *Johnson v. Westhoff Sand Co.*, 281 Kan. 930, 959, 135 P.3d 1127 (2006).

K.S.A. 28-141 applies to fees of witnesses and expenses paid by "either party" in "any civil action." It reads:

> "All fees and sums paid by either party for fees of witnesses and other necessary expenses in any civil action or proceeding shall be proved by the affidavit of the party, or of some person knowing the same to have been paid; and all such fees shall be taxed and collected from the party ordered or adjudged to pay the costs." K.S.A. 28-141.

By its plain language, K.S.A. 28-141 applies here. Moreover, in *Grant v. Chappell*, 22 Kan. App. 2d 398, 400, 916 P.2d 723 (1996), a panel of this court, in dicta, connected K.S.A. 28-141 to K.S.A. 60-2003.

17

But Kevin McMaster does not cite any decision finding an abuse of discretion in an assessment of costs where the prevailing party failed to support its mileage request with an affidavit.

The trial court did not make an error of fact. Piper testified he worked out of his home in Kansas City, Missouri. Moore testified he lived in Jacksonville, Florida. A reasonable person could agree with the trial court's decision to assess the mileage as costs. Therefore, we see no reason to modify the award for mileage.

*Depositions*

K.S.A. 60-2003 permits charges for depositions to be assessed as costs if the depositions were "used as evidence." It reads, "Items which may be included in the taxation of costs are: . . . (5) Reporter's or stenographic charges for the taking of depositions used as evidence." K.S.A. 2023 Supp. 60-2003.

In the absence of extraordinary circumstances, the charges for discovery depositions not admitted into evidence may not be assessed as costs under K.S.A. 60-2003. The reason is that discovery depositions fall into the realm of trial preparation. *Bridges*, 244 Kan. at 446. In *Bridges*, our Supreme Court concluded the trial court abused its discretion in assessing as costs the charges for discovery depositions that were used in the questioning of witnesses but never admitted into evidence. No extraordinary circumstances were alleged. 244 Kan. 446.

This court has allowed the assessment of costs for depositions not used as evidence at trial in two circumstances that we think are inapplicable here. For example, this court upheld the trial court's decision that taxed deposition charges as costs where the depositions were used as evidence by the trial court in deciding a summary judgment motion because the depositions served the same purpose as the depositions would have

18

served at trial. *Frederking v. Frederking*, 26 Kan. App. 2d 614, 615, 992 P.2d 1255 (1999).

The next illustration is *Cessna Aircraft Co. v. Metro. Topeka Airport Auth.*, 23 Kan. App. 2d 1038, 1060, 940 P.2d 84 (1997). In *Cessna*, during discovery the trial court had ordered all experts designated be present for trial. The defendant designated seven experts who did not appear at trial. This court held extraordinary circumstances justified the trial court's assessment of those deposition costs even though they were not used as evidence at trial against the defendant because the plaintiffs were put to the expense of deposing so many experts who did not appear at trial. 23 Kan. App. 2d at 1060.

We are duty bound to follow Kansas Supreme Court precedent unless there is some indication that the Supreme Court is departing from its previous position. *State v. Patton*, 315 Kan. 1, 16, 503 P.3d 1022 (2022). We are bound by *Bridges*. Auto Auction fails to assert any exceptional circumstances. Kevin McMaster cannot be assessed the costs of the depositions used in questioning of witnesses but not admitted into evidence at trial. The trial court abused its discretion by taxing the charges for the two depositions as costs.

Accordingly, we set aside that portion of the district court's judgment that awards the costs of the two depositions.

*We find no abuse of discretion in the trial court's award of sanctions.*

After trial, Auto Auction moved for an order of sanctions against Kevin McMaster under K.S.A. 60-211 in the amount of $41,525.50. Auto Auction sought attorney's fees for having to respond to, among other things, Kevin McMaster's (1) motion to dismiss, (2) counterclaims, and (3) several witnesses he listed on the pretrial conference order who did not appear at trial.

19

The trial court granted the motion in part and awarded a sanction in the amount of $8,684.50. After presiding over almost five years of litigation in this and the underlying suit, the court observed that Kevin McMaster's "intentionally pugnacious and bedeviling strategy was repeatedly evident." The court noted Kevin McMaster was an attorney. After almost three years of litigation preparation, Kevin McMaster presented only his own testimony at trial in the underlying suit. He told Linda she did not need to show up for trial even though she had been subpoenaed. The court found the motion to dismiss, counterclaims, and 13 witnesses listed on the pretrial conference order in this case were presented for the improper purposes of causing unnecessary delay, needlessly increasing the cost of litigation, and harassment.

On appeal, Kevin McMaster argues the trial court erred when it granted Auto Auction's motion for sanctions under K.S.A. 60-211(c).

The trial court may, in its discretion, sanction an attorney or party if they present to the court a pleading, written motion, or other paper:

- for any improper purpose, such as to harass, cause unnecessary delay or needlessly increase the cost of litigation;
- in which the claims, defenses and other legal contentions were unwarranted by existing law or by a nonfrivolous argument for extending, modifying or reversing existing law or for establishing new law;
- in which the factual contentions lacked evidentiary support.

The sanction may include an order to pay to the other party attorney's fees incurred because of the filing of the pleading, motion or other paper. K.S.A. 2023 Supp. 60-211(b),(c).

20

We review the trial court's imposition of sanctions under K.S.A. 2023 Supp. 60-211 for an abuse of discretion. *In re Marriage of Bergmann & Sokol*, 49 Kan. App. 2d 45, 50, 305 P.3d 664 (2013).

A sanction for presenting claims, defenses, or other legal contentions unwarranted by existing law is generally imposed when the legal theory contradicts a statute or caselaw. See *Vondracek v. Mid-State Co-op, Inc.*, 32 Kan. App. 2d 98, 104-05, 79 P.3d 197 (2003). Litigants must not be prevented from developing new theories or presenting new causes of action merely because they are untested. "Where the weight of authority is overwhelmingly unfavorable to a litigant's position or there is controlling authority against it, there may be a question whether the claim is warranted by a good faith argument for extension, modification or reversal." *In re Hesston Corp.*, 254 Kan. 941, 990, 870 P.2d 17 (1994).

The purpose of K.S.A. 60-211 is to deter "'repetition of improper conduct.'" *Wood v. Groh*, 269 Kan. 420, 430, 7 P.3d 1163 (2000). Courts consider nine factors when determining whether to sanction a party and what kind of sanction to impose:

> "(1) whether the improper conduct was willful or negligent;
> (2) whether it was part of a pattern of activity or an isolated event;
> (3) whether it infected the entire pleading or only one particular count or defense;
> (4) whether the person has engaged in similar conduct in other litigation;
> (5) whether it was intended to injure;
> (6) what effect it had on the litigation process in time or expense;
> (7) whether the responsible person is trained in the law;
> (8) what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; and
> (9) what amount is needed to deter similar activity by other litigants." *Wood*, 269 Kan. at 430-31.

Kevin McMaster objects to the trial court's references to his actions in the underlying suit in its sanction analysis. But *Wood* expressly permits a trial court to consider "whether the person has engaged in similar conduct in other litigation." 269 Kan. at 431. His objection is not persuasive.

We move now to examine the motion to dismiss, the counterclaims, and the witness listing and see if there is an abuse of discretion by the district court.

*Motion to dismiss*

The trial court found that Kevin McMaster's motion to dismiss lacked any basis in law. First, the court found Kevin McMaster's argument that the petition should be dismissed because Auto Auction lacked authorization to transact business in Kansas was contrary to K.S.A. 17-7932(a)(1).

Kevin McMaster argues K.S.A. 17-7932 is irrelevant. Auto Auction was not authorized to do business in Kansas when the malicious prosecution action was filed making the suit in violation of K.S.A. 17-7307(a). Auto Auction argues that the deficiency was corrected before Kevin McMaster filed the motion to dismiss.

In its petition, Auto Auction alleged it was an Arkansas corporation with a place of business in Wichita, Kansas. The petition was filed in July 2018. On August 28, 2018 Kevin McMaster moved to dismiss arguing Auto Auction was not authorized to do business in Kansas and thus could not maintain a suit under K.S.A. 17-7307(a). In response to Kevin McMaster's motion to dismiss, Auto Auction admitted that—based on its failure to file an annual report in 2018—Auto Auction forfeited its status of good standing in Kansas effective July 2018. But Auto Auction was reinstated on August 13, 2018. The testimony at trial revealed Auto Auction was still doing some kind of business in Kansas.

22

Kansas does have "closed-door statutes." Out-of-state companies that have not registered to do business in Kansas, when required by law to do so, may not sue in Kansas courts. K.S.A. 2023 Supp. 17-7307(a); *Douglas Landscape & Design, LLC v. Miles*, 51 Kan. App. 2d 779, 782, 355 P.3d 700 (2015). Registration is required only when the company is doing business in Kansas. *Douglas Landscape*, 51 Kan. App. 2d at 782. Maintaining an action in Kansas, by itself, does not constitute doing business. K.S.A. 2023 Supp. 17-7932(a)(1).

But a violation of K.S.A. 17-7307(a) can be cured. Compliance with K.S.A. 17-7307(a) after an action has begun enables the corporation to maintain the action. See *Corco, Inc. v. Ledar Transport, Inc.*, 24 Kan. App. 2d 377, 378-79, 946 P.2d 1009 (1997) (holding the proper remedy under the facts was dismissal without prejudice).

Kevin McMaster's legal theory that the petition should be dismissed under K.S.A. 17-7307(a) was not clearly contrary to Kansas statute or caselaw. Auto Auction admitted it was not authorized to do business as of the date it filed suit. The trial court made an error of law by relying on K.S.A. 17-7932 because, if Auto Auction was doing business in Kansas outside of this legal action as shown by the trial testimony, then the K.S.A. 17-7932(a)(1) exception would not apply. Therefore, the court abused its discretion.

Next, in his motion to dismiss, Kevin McMaster argued that the petition failed to state a claim upon which relief could be granted because he had probable cause to file the underlying lawsuit and acted without malice. The trial court found Kevin McMaster's lack of probable cause to maintain the underlying action and malice was apparent from, among other things, his failure in the first trial to present evidence other than his own testimony after three years of litigation preparation. In the words of the judge, "The intent to harass, cause unnecessary delay and needlessly increase the cost of litigation to I-135 was very evident to the Court."

23

Kevin McMaster argues it was reasonable to argue, based on the decision in *Porubsky v. Long,* No. 120,727, 2021 WL 2385860 (Kan. App. 2021) (unpublished decision), that Auto Auction's petition failed to state a claim because he had probable cause to file the underlying action. Auto Auction argues it properly pled a claim for malicious prosecution.

Kansas is a notice-pleading state. See *Williams v. C-U-Out Bail Bonds*, 310 Kan 775, 784, 450 P.3d 330 (2019). Generally, a petition needs only "(1) [a] short and plain statement of the claim showing that the pleader is entitled to relief; and (2) a demand for relief sought." K.S.A. 2023 Supp. 60-208(a). Factual disputes cannot be resolved or decided on a motion to dismiss for failure to state a claim. If the well-pled facts and inferences that may reasonably stem from them state *any* claim upon which relief can be granted, then dismissal is improper. Dismissal is proper only when the allegations in the petition clearly demonstrate the plaintiff does not have a claim. *Kudlacik v. Johnny's Shawnee, Inc.*, 309 Kan. 788, 790, 440 P.3d 576 (2019); see K.S.A. 2023 Supp. 60-212(b)(6).

Kevin McMaster has failed to show that the trial court abused its discretion on this point. The trial court could not resolve the factual disputes concerning probable cause and malice on a motion to dismiss. As a trained lawyer, Kevin McMaster knew this. The trial judge presided over both suits and was in the best position to judge Kevin McMaster's intent to harass, cause unnecessary delay, and needlessly increase the cost of litigation.

Lastly, in his motion to dismiss, Kevin McMaster argued Auto Auction's request in its petition for attorney fees for prosecuting the malicious prosecution action conflicted with Kansas law. On appeal, he argues sanctions were unwarranted based on this claim. He argues Auto Auction's request for attorney fees for prosecuting this malicious prosecution action had no merit and was abandoned by Auto Auction. The abandonment

24

of the claim should equate to an acknowledgment that the sanctions were unwarranted. Auto Auction states it withdrew the claim for attorney fees at the pretrial conference.

The trial court found Auto Auction did not abandon the claim. Rather, the court recalled it had ruled prior to trial it would not allow Auto Auction to present evidence to the jury of the attorney fees incurred to prosecute the malicious prosecution action.

In its petition, Auto Auction sought attorney fees for prosecuting the malicious prosecution action. Kevin McMaster moved to dismiss the damage claim because attorney fees are generally not recoverable absent statutory authority or agreement by the parties. In denying the motion, the trial court ruled that attorney fees were "potentially within the appropriate damages pursuant to *Nelson v. Miller*, 227 Kan. [at 282]." The claim for attorney fees was in the pretrial order. An agreed amendment to the order changed the amount requested from $14,000 to $78,970.88. The parties fail to cite to the record for their contentions about what happened next.

Kevin McMaster's motion to dismiss the attorney fee claim was not clearly contrary to Kansas statute or caselaw. The trial court ruled only that attorney fees for prosecuting the malicious prosecution claim were potentially appropriate damages. The trial court acknowledged it did not let the attorney fee claim go to the jury. It is unclear from the trial court's ruling why it sanctioned Kevin McMaster for moving to dismiss the attorney fee damages. This was an abuse of discretion.

*Counterclaims*

The trial court found Kevin McMaster's counterclaims were not supported by fact or law. The counterclaim for malicious prosecution was void of evidentiary support because there was no prior proceeding that Auto Auction procured, initiated, or continued

which terminated in favor of Kevin McMaster. The court also found that Kevin McMaster had no standing to assert that counterclaim.

Kevin McMaster argues his counterclaim for malicious prosecution was warranted by existing law and nonfrivolous arguments for extension of existing law. He had a stake in the controversy because he was damaged by incurring the cost to defend Parker.

Kevin McMaster's counterclaim for malicious prosecution was based on Auto Auction's third-party petition against Parker in the underlying suit. Auto Auction alleged Parker should be liable because, but for her default on her line of credit with Speedy Cash, Auto Auction would never have been in possession of the McMasters' garage door opener. The trial court dismissed that claim. For his counterclaim in this case, he argued Auto Auction filed the third-party petition because it knew Parker could not afford to defend herself and, thus, Kevin McMaster was damaged by having to defend Parker.

Kevin McMaster's counterclaim was contrary to the clearly established elements of malicious prosecution. In the underlying proceeding, Auto Auction did not initiate, continue, or procure civil procedures against Kevin McMaster. The third-party petition was against Parker. The claim was dismissed in favor of Parker, not Kevin McMaster. See *Bartal*, 268 Kan. at 200.

A reasonable person could agree with the trial court's decision to sanction Kevin McMaster for the counterclaim. The trial judge presided over both suits and was in the best position to judge his intent to harass, cause unnecessary delay, and needlessly increase the cost of litigation.

The trial court found that his fraud and misrepresentation counterclaims were barred by collateral estoppel, lacked merit, and were not supported by fact or law. Kevin

26

McMaster argues collateral estoppel did not apply to his counterclaims for fraud and misrepresentation as he was not a party to the underlying suit.

Kevin McMaster's counterclaims for fraud and misrepresentation were based on his contention that in the underlying suit Auto Auction knew and had admitted that the McMasters' garage door opener was in Parker's vehicle. In the underlying case, the trial court found Linda McMaster failed to present any direct evidence at trial that the defendants ever had possession of her garage door opener. Linda did not appeal.

A reasonable person could agree with the trial court's decision to sanction Kevin McMaster for these counterclaims. His factual contentions lacked evidentiary support.

*Listing more than a dozen witnesses*

The trial court found 13 witnesses Kevin McMaster listed on the pretrial conference order had nothing to do with the case. The witnesses included four district court judges (including the presiding judge), the court reporter from the first trial, two attorneys with the firm representing Auto Auction, four attorneys with no connection to the case, and the prior owners of a former auction business similar to Auto Auction. The trial court found these witnesses could not have provided any relevant testimony. None testified at trial. Kevin McMaster's witness list was just made to create extra work for opposing counsel.

Kevin McMaster argues the 13 witnesses he listed on the pretrial conference questionnaire had firsthand knowledge about the case.

A reasonable person could agree with the trial court's decision to sanction Kevin McMaster for this witness list that included the presiding judge, court reporter, and attorneys from opposing counsel's firm. The trial court was in the best position to judge

27

Kevin McMaster's intent to harass, cause unnecessary delay, and needlessly increase the cost of litigation.

Because the court abused its discretion in granting the motion to dismiss, we set aside that portion of the sanction caused by its inclusion in the award for sanctions. All other sanctions mentioned above are affirmed.

CROSS-APPEAL

*The court did not err in granting Linda McMaster's motion for judgment as a matter of law.*

Auto Auction cross-appeals the trial court's decision to grant judgment as a matter of law in favor of Linda McMaster. It argues the question of malice should have been left for the jury. The jury could have inferred malice from the absence of probable cause. Linda could not have acted on advice of counsel because she received no legal advice from Kevin McMaster before or during the pendency of the underlying suit.

In reply, Linda contends she had probable cause to initiate and continue the underlying suit, she properly relied on Kevin McMaster's counsel to handle the suit, the underlying suit did not terminate wholly in favor of Auto Auction, and no evidence showed Linda had acted with malice.

Caselaw compels our ruling here. The advice of counsel is a complete defense to malicious prosecution. The defense is conditioned on the client acting in good faith and having fully disclosed to the attorney all material facts within their knowledge and which could have been learned with diligent effort. *Bartal*, 268 Kan. at 197; *Nelson*, 227 Kan. at 279-80.

28

The evidence showed Linda did the investigation that a reasonable person would have done. She testified she talked to Parker the night of the car repossession and the next morning. She also spoke with the repossession agent on the phone. She relayed the information she had learned to Kevin McMaster who assured her he would handle the matter. She relied on her husband and attorney to further investigate and to act to get their garage door opener back. There was no contrary testimony. Linda was not present when Kevin McMaster spoke to Rivas in a threatening manner at Auto Auction. She had a complete defense. The district court did not err by granting her motion for judgment as a matter of law.

We affirm all aspects of the district court's ruling, except we reverse the judgment for payment of the two deposition costs and vacate the sanction for filing the motion to dismiss.

The cross-appeal is denied.

Affirmed in part, reversed in part, and vacated in part.